Derek H. Swanson (*pro hac vice*)
dswanson@mcguirewoods.com
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775.1081
Facsimile: (804) 698.2258

[*Additional Counsel Listed in Signature Block*]

Attorneys for Defendant Ford Motor Company

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| JANIS BENKLE, JOHN KOVAK, EDWARD KYLE, JULIO ROJAS, KELLY SUPONCHICK, JOE MCGLOTHIN, FERNANDO AVILES, BARRY KIERY, MICHAEL KELDER, JAMES COWEN, ROBERT SANDLER, AND SILVIA FRANCO, individually, and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br>   vs.<br><br>FORD MOTOR COMPANY,<br><br>      Defendant. | Case No.:  8:16-cv-01569-DOC-JCG<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS CERTAIN CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>Date:  Monday, October 16, 2017<br>Time:  8:30 a.m.<br>Location:  Ronald Reagan Building<br>      United States Courthouse<br>      411 West Fourth Street<br>      Santa Ana, CA 92701<br>      9th Floor, Courtroom 9D |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................. 10

II.  BACKGROUND ................................................................ 11

    A.  The Alleged Defect ................................................... 11

    B.  NHTSA's Investigation .............................................. 12

    C.  The Named Plaintiffs' Varying Experiences ..................... 14

        1.  Fernando Aviles ........................................... 15

        2.  Janis Benkle ............................................... 15

        3.  James Cowen ............................................. 16

        4.  Michael Kelder ........................................... 16

        5.  Barry Kiery ............................................... 16

        6.  John Kovak ............................................... 16

        7.  Edward Kyle .............................................. 17

        8.  Joe McGlothin ........................................... 17

        9.  Julio Rojas ............................................... 17

        10.  Robert Sandler ........................................... 18

        11.  Kelly Suponchick........................................ 18

III.  SUMMARY OF CLAIMS ................................................... 19

IV.  ARGUMENT ................................................................. 20

    A.  PLAINTIFFS HAVE NOT ALLEGED ESSENTIAL
       ELEMENTS OF THEIR FRAUD-BASED CLAIMS ........................ 22

2

Memorandum of Law in Support of Defendant Ford Motor Company's Motion to
Dismiss Certain Claims in Plaintiffs' Consolidated Class Action Complaint

# TABLE OF CONTENTS
(continued)

Page

1. Plaintiffs' Fraud-based Allegations Are Too Vague to Meet FRCP 9(b) Scrutiny ...........................................................22

2. Various Plaintiffs Were Not Injured by Any Concealment of the Alleged Defect................................................................23

3. Ford Did Not Have a Duty to Disclose the Alleged Defect ......24

4. Ford's Warranty Discloses the Potential for a Defect..............25

B. PLAINTIFFS' EXPRESS WARRANTY CLAIMS ...........................27

1. Plaintiffs' Affirmation-Based Warranty Claims Do Not Identify Any Affirmation of Fact ..............................................28

2. Various Plaintiffs Were Not Injured by the Alleged Defect .....29

    a. Plaintiffs who did not experience manifestations cannot allege express warranty claims under their respective state's laws ........................................29

    b. Plaintiffs who had their vehicles successfully repaired under warranty cannot allege breach-of-express warranty claims under their California law........31

    c. Plaintiffs who had their vehicles repaired out of warranty cannot allege breach of express warranty claims under their respective state's laws ......................32

    d. Plaintiffs who did not present their vehicles for repair cannot allege breach of warranty claims under their states' laws ...........................................34

3

**TABLE OF CONTENTS**
(continued)

**Page**

3.  Plaintiffs Who Did Not Provide Notice of Breach When Required Cannot Assert Express Warranty Claims..................35

C.  PLAINTIFFS' IMPLIED WARRANTY CLAIMS ARE NOT LEGALLY SUFFICIENT....................................................................37

1.  Plaintiffs Who Did Not Experience Manifestations Cannot Allege Implied Warranty Claims Under Their States' Laws.........................................................................................37

2.  Plaintiffs Who Received In-Warranty ETB Replacement Cannot Assert Implied Warranty Claims ...................................38

Under California law, there is no breach of any implied warranty where the vehicle is "roadworthy in its present condition without any repairs."..................................................................38

3.  Plaintiffs Who Bought Used Vehicles Cannot Assert Implied Warranty Claims ...........................................................38

D.  PLAINTIFFS' CLAIMS UNDER THE MAGNUSON MOSS WARRANTY ACT.............................................................................40

E.  PLAINTIFFS' UNJUST ENRICHMENT CLAIMS..........................40

1.  Various Plaintiffs Did Not Confer an Unfair Benefit on Ford Motor Company ...............................................................40

2.  California Plaintiffs Have No Cause of Action for Unjust Enrichment....................................................................................42

4

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO
DISMISS CERTAIN CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS
(continued)

**Page**

3.    The Nebraska Plaintiff Is Barred by the Existence of an Express Written Warranty Document.......................................42

V.    CONCLUSION ...............................................................................42

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS CERTAIN CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ................................... 21

*Bailey v. Monaco Coach Corp.*,
   168 F. App'x 893 (11th Cir. 2006) ......................................................................... 39

*Baron v. Osman*,
   39 So. 3d 449 (Fla. App. 2010) ............................................................................. 41

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................... 21

*Belville v. Ford Motor Co.*,
   13 F. Supp. 3d 528 (S.D. W. Va. 2014) .......................................................... 30, 37

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) ............................................................................... 21

*Borchardt v. Mako Marine Int'l, Inc.*,
   No. 08-61199-CIV-MARRA, 2011 U.S. Dist. LEXIS 55150 (S.D.
   Fla. May 24, 2011) ................................................................................................ 28

*Brand v. Hyundai Motor Am.*,
   226 Cal. App. 4th 1538, 173 Cal. Rptr. 3d 454 (Cal. Ct. App. 2014) .................. 38

*Brisson v. Ford Motor Co.*,
   349 F. App'x 433 (11th Cir. 2009) ........................................................... 30, 33, 35

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ......................................................................... 39, 40

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) ............................................................................... 40

*Davidson v. Apple, Inc.*,
   No. 16-CV-4942, 2017 U.S. Dist. LEXIS 36524 (N.D. Cal. May 4,
   2012) ...................................................................................................................... 30

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO
DISMISS CERTAIN CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

*Fedrick v. Mercedes-Benz USA, LLC*,
   366 F. Supp. 2d 1190 (N.D. Ga. 2005) ............................................... 31

*In re Ford Tailgate Litig.*,
   No. 11-CV-2953-RS, 2014 U.S. Dist. LEXIS 32287 (N.D. Cal. Mar.
   12, 2014) ............................................................................................. 42

*Freeman v. Hoffman-La Roche, Inc.*,
   618 N.W.2d 827 (Neb. Ct. App. 2000) ............................................... 29

*Garcia v. Chrysler Grp. LLC*,
   127 F. Supp. 3d 212 (S.D.N.Y. 2015)................................................. 24

*Gedalia v. Whole Foods Mkt. Servs., Inc.*,
   53 F. Supp. 3d 943 (S.D. Tex. 2014)................................................... 29

*Ex parte Gen. Motors Corp.*,
   769 So. 2d 903 (Ala. 1999) .................................................................. 39

*Gerstle v. Am. Honda Co., Inc.*,
   No. 16-cv-04384-JST, 2017 U.S. Dist. LEXIS 62809 (N.D. Cal.
   Apr. 25, 2017)...................................................................................... 41

*Gertz v. Toyota Motor Corp.*,
   CV 10-1089, 2011 U.S. Dist. LEXIS 94183 (C.D. Cal. Aug. 22,
   2011) ............................................................................................... 30, 31

*Ghirardo v. Antonioli*,
   14 Cal. 4th 39 (Cal. 1996) ................................................................... 40

*Hapag-Lloyd, A.G. v. Marine Indem. Ins. Co. of Am.*,
   576 So. 2d 1330 (Fla. Ct. App. 1991) ................................................. 36

*Hughes v. Hertz Corp.*,
   670 So. 2d 882 (Ala. 1995) .................................................................. 30

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   801 F. Supp. 2d 993 (S.D. Cal. 2011) ................................................. 28

*Jovine v. Abbott Labs, Inc.*,
   795 F. Supp. 2d 1331 (S.D. Fla. 2011)................................................ 39

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)............................................................. 22

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO
DISMISS CERTAIN CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

*McKay v. Novartis Pharm. Corp.*,
    751 F.3d 694 (5th Cir. 2014) ............................................................. 36

*Morris Concrete, Inc. v. Warrick*,
    868 So. 2d 429 (Ala. Civ. App. 2003) ............................................. 39

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ........................................................... 21

*Munch v. Sears Roebuck & Co.*,
    No. 06 C 7023, 2007 U.S. Dist. LEXIS 62897 (N.D. Ill. Aug. 27,
    2007) .................................................................................................. 26

*Neuser v. Carrier Corp.*,
    No. 06-C-645-S, 2007 U.S. Dist. LEXIS 9663 (W.D. Wis. Feb. 9,
    2007) .................................................................................................. 25

*Pfizer, Inc. v. Farsian*,
    682 So. 2d 405 (Ala. 1996) ....................................................... 23, 37

*Resnick v. Hyundai Motor Am., Inc.*,
    No. CV 16-00593-BRO, 2017 U.S. Dist. LEXIS 67525 (C.D. Cal.
    Apr. 13, 2017) .................................................................................. 38

*Seibert v. Gen. Motors Corp.*,
    853 S.W.2d 773 (Tex. App. 1993) ................................................... 24

*Shein v. Canon U.S.A., Inc.*,
    No. 08-07323-CAS, 2009 U.S. Dist. LEXIS 94109 (C.D. Cal. Sept.
    22, 2009) ........................................................................................... 31

*Smith v. Apple, Inc.*,
    Civ. Action No. 08-AR-1498-S, 2009 WL 3958096 (N.D. Ala. Nov.
    4, 2009) ............................................................................................. 35

*Sukonik v. Wright Med. Tech., Inc.*,
    No. CV 14-08278 BRO, 2015 U.S. Dist. LEXIS 177502 (C.D. Cal.
    Jan. 26, 2015) ................................................................................... 22

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ........................................................... 21

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO
DISMISS CERTAIN CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

*Tait v. BSH Home Appliances Corp.*,
   No. 2:08-CV-0051, 2011 U.S. Dist. LEXIS 10384 (C.D. Cal., Aug.
   31, 2011) ...................................................................................... 22, 24

*Taragan v. Nissan N. Am. Co., Ltd.*,
   No. C 09-3660, 2013 U.S. Dist. LEXIS 87148 (N.D. Cal. Jun. 20,
   2013) ................................................................................................. 37

*Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*,
   No. 5:05-cv-260-Oc-GRJ, 2008 WL 3200286 (M.D. Fla. Aug. 6,
   2008) ................................................................................................. 24

*Thiedemann v. Mercedes-Benz USA, LLC*,
   872 A.2d 783 (N.J. 2005) ................................................................. 25

*Trieweiler v. Sears*,
   689 N.W.2d 807 (Neb. 2004) ........................................................... 41

*Willard v. Home Depot, U.S.A., Inc.*,
   No. 5:09-cv-110/RS-MD, 2009 U.S. Dist. LEXIS 113493 (N.D. Fla.
   Dec. 7, 2009) ................................................................................... 36

**Statutes**

49 U.S.C. §§ 30116(a), 30118(c)(1), 30120(a) ...................................... 26

Ala Code §§ 7-2-214 and 7-2A-212 ........................................................ 20

Ala. Code § 7-2-313 ................................................................................ 28

Ala. Code §§ 7-2-313 and 7-SA-210 ....................................................... 20

**Other Authorities**

Fed. R. Civ. P. 1 ...................................................................................... 11

Fed. R. Civ. P. 8(a) ................................................................................. 14

Fed. R. Civ. P. 9(b) ..................................................................... 21, 22, 23

Fed. R. Civ. P. 12(b)(6) ..................................................................... 10, 14

C.D. Cal. Local Civil Rule 7-5 ............................................................... 10

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO
DISMISS CERTAIN CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

Defendant Ford Motor Company ("Ford"), respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Certain Claims in Plaintiffs' Class Action Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), Local Civil Rule 7-5, and the Court's May 16, 2017 Order Adopting Proposed Dates Affected by Consolidation (Dkt. 63).

# I.   INTRODUCTION

Plaintiffs have filed a Consolidated Class Action Complaint ("Complaint") (Dkt. 75) accusing Ford of fraudulently concealing an alleged defect in the electronic throttle body ("ETB") in certain vehicles.  The seventy-three (73)-page Complaint purports to tell a story of an automobile manufacturer that has nefariously "refused to recall hundreds of thousands of knowingly unsafe Defective Vehicles with defective ETBs."  (Compl. ¶ 88.)

Examined closely, however, the substantive allegations in the Complaint, taken as true, tell a different story: Ford, faced with growing knowledge of a performance issue in some vehicles (the National Highway Transit Safety Administration ("NHTSA") did not make a "safety defect" finding), collaborated with NHTSA on certain Customer Satisfaction Programs for those vehicles experiencing a comparatively high volume of customer complaints.  Ford used design improvements in the ETB to reduce the likelihood of any performance issues, and has made that improved ETB the default replacement for any customer who requests a repair.  The Complaint alleges that six (6) of the eleven (11) named Plaintiffs (Benkle, Kovak, Kyle, McGlothin, Rojas, Suponchick) have had their ETB replaced with the improved ETB—some under warranty, some after the warranty expired—and the Complaint does not allege that these Plaintiffs' vehicles have experienced any problems since.  For four (4) of the other named Plaintiffs (Aviles, Cowen, Kelder, Kiery), the Complaint lacks any allegation that they have

ever experienced any issue whatsoever.  The remaining named Plaintiff (Sandler) alleges he experienced issues, but does not allege that he sought a repair.[1]  In other words, even among a hand-picked group of named Plaintiffs for a class action, every named Plaintiff either has had no problem with their ETB, or has sought and received a successful repair.

Given these facts, and given the admonition of FRCP 1 to "secure the just, speedy, and inexpensive determination of every action and proceeding," this Court should save the parties the extraordinary amount of time and money it takes to litigate a proposed class action, and dismiss Plaintiffs' claims.[2]

## II.   BACKGROUND

### A.   The Alleged Defect

According to Plaintiffs' Complaint, Ford equipped the subject vehicles with an allegedly defective ETB.  As a result, some (but not all) of the named Plaintiffs allegedly experienced "power loss" or "limp home mode" while driving their vehicles.  Specifically, Plaintiffs contend:

> [T]he DC motor component of the Delphi Gen 6 ETB is known to lose electrical connectivity as a result of "a high resistance material buildup condition on the commutator."  When this condition occurs, the Powertrain Control Module within the Defective Vehicles (defined below) can no longer determine the position of the throttle, which

---

[1] Plaintiffs have alleged virtually no specific facts in support of Robert Sandler's claims; therefore Ford cannot say in this motion whether he ever presented his vehicle for repair.  Ford will discuss the deficiencies with his claims below.

[2] Ford seeks dismissal of each and every count of Plaintiffs' Complaint, except for Count III with respect to named Plaintiffs Kyle and McGlothin, and Count IV with respect to named Plaintiffs Kyle, McGlothin, and Sandler.

1    immediately triggers Failure Mode Effects Management,

2    commonly known as "limp-home mode." Limp-home

3    mode drastically and immediately restricts the vehicle's

4    speed to a few miles per hour, which most drivers, caught

5    by surprise, interpret as a stall and complete loss of power.

6  (Compl. ¶ 4, *see also id.* ¶¶ 92, 93, 96.)  Plaintiffs contend that this alleged defect

7  "presents an unreasonable safety risk."  (*Id.* ¶¶ 97–103.)

8           B.    NHTSA's Investigation

9           In response to complaints about an earlier version of the Delphi Gen 6 ETB,

10  NHTSA—the federal agency tasked with investigating and remedying safety-related

11  defects—opened a Petition Analysis in 2012.  (*Id.* ¶ 104.)[3]  On February 13, 2013,

12  after analyzing "hundreds" of complaints, NHTSA upgraded its investigation to a

13  Preliminary Evaluation, meaning that it collected information from Ford about the

14  alleged defect.  (Compl. ¶ 105; NHTSA, *Motor Vehicle Defects and Safety Recalls*

15  (explaining Preliminary Evaluation).)  A year later, NHTSA closed its Preliminary

16  Evaluation.  (Compl. ¶ 106.)  NHTSA did not find any safety-related defect in the

17  ETB.[4]

18

19  _____

20  [3] A Petition Analysis (which Plaintiffs here call a "Defect Petition") is an analysis of

21  a petition for investigation filed by members of the public.  *See* NHTSA, *Motor Vehicle Defects and Safety Recalls: What Every Vehicle Owner Should Know*,

22  https://www-odi.nhtsa.dot.gov/recalls/recallprocess.cfm (last viewed 19 July 2017).

23  In this case, the North Carolina Consumers Council requested an investigation into stalling in certain vehicles. (Compl. ¶ 104.)

24  [4] As it always does, NHTSA conscientiously points out that its not finding a defect

25  is *not* the same as a definitive finding of "no defect."  (Compl. ¶ 106 (quoting NHTSA).)  But it is worth remembering that NHTSA *does* make explicit defect

26  findings when it believes them necessary.  Therefore, a refusal to make an explicit

27  finding, while not definitive, is significant.

28

NHTSA closes Preliminary Evaluations for various reasons; the most common being that it believes no further research is warranted, or that the manufacturer agrees to some remedial measure. NHTSA, *Motor Vehicle Defects and Safety Recalls.* In this case, NHTSA's closing appears related to both of these reasons. NHTSA did not find a safety-related defect during the Preliminary Evaluation and Ford implemented several going-forward fixes that would reduce the likelihood of the vehicles experiencing the issues that had prompted the investigation, including Customer Service Programs and a modified ETB. As NHTSA reported:

> During this investigation, Ford and its suppliers, Delphi and Igarashi, *updated the powertrain control module (PCM) software* to include a throttle body motor cleaning cycle during key-on and *modified the ETB* internal motor components design, surface finish and material composition to improve durability.

(Compl. ¶ 106 (quoting ODI closing resume) (emphasis added).) Therefore, according to the Complaint, vehicles repaired after February 2014 included a replacement with a new, updated ETB.

Plaintiffs try to underplay these improvements by contending that "Ford's 'fix' was merely to provide *calibration and software updates*, neither of which did anything to correct the root cause of the problem, the defective ETBs." (*Id.* ¶ 6) (emphasis added).) As a result, Plaintiffs claim that Ford's improvements to the ETB resulted in a "temporary" and "inadequate" repair. (*Id.* ¶¶ 182, 196.) In fact, however, as their quotation of NHTSA's closing resume details (*see id.* ¶ 106), and as their own experiences (discussed in greater detail below) confirm, Ford made substantial material and design improvements to the ETBs that significantly reduce the likelihood of any vehicle experiencing the alleged "power loss" issue.

C.    The Named Plaintiffs' Varying Experiences[5]

Before a class is certified, a proposed class action is not an aggregated lawsuit.  Instead, it is a lawsuit that asserts claims on behalf of—and binds only— those plaintiffs named in the caption.  As a result, during a motion to dismiss, it is important to determine whether these particular named plaintiffs have pled causes of action that will survive FRCP 12(b)(6) scrutiny.

Each Plaintiff's account of how each of them was defrauded by Ford's representations is substantially the same.  Using Plaintiff Benkle's allegations as an example:

> 19.  Plaintiff Benkle purchased her vehicle without knowledge of the Throttle Defect and without knowledge that the vehicle contained defective components.
>
> 20.  Before purchasing the vehicle, Plaintiff Benkle reviewed Ford's promotional materials regarding the vehicle and interacted with at least one sales representative at an authorized Ford dealership.  Had Ford disclosed its knowledge of the Throttle Defect, Plaintiff Benkle would have seen and been aware of it.
>
> 21.  When Plaintiff Benkle purchased her vehicle, she reasonably expected that its component parts, including the ETB, would function properly.   Plaintiff suffered

---

[5] While named Plaintiff Sylvia Franco appears in the Complaint's caption and introduction (Compl. at 2:1–10), there are no claims or allegations regarding her purchase of or experience with her vehicle in the Complaint itself.  To the extent she asserts any claims in this litigation, they should be dismissed for lack of support under FRCP 8(a).

injury-in-fact and lost money as a result of the conduct at issue because had Ford disclosed the existence of the Throttle Defect and the fact that the vehicle was equipped with a non-functioning ETB, she would not have purchased the vehicle or would have paid significantly less. Indeed, as part of the purchase of her vehicle, Plaintiff Benkle paid for a safe, functioning ETB, which did not contain known defects, but that is not what she received.

(Compl. ¶¶ 19–21; *see also* ¶¶ 36–38 (Aviles), 83–85 (Cowen), 63–65 (Kelder), 27–29 (Kovak), 60–62 (Kiery), 46–48 (Kyle), 77–79 (McGlothin), 52–56 (Rojas), 40–42 (Sandler), 69–71 (Suponchick).) Ms. Benkle, like the other Plaintiffs, does not specify what promotional materials she reviewed, which Ford representative she met with, or what that representative did or did not say.

Past these uniform, conclusory allegations, each named Plaintiff offers a smattering of facts about their vehicles. Nonetheless, even these limited factual allegations provide various grounds for dismissal.

### 1. Fernando Aviles

Plaintiff Aviles is a citizen of California. (Compl. ¶ 36.) He bought a used 2012 Mustang on January 3, 2015. (*Id.*) Like the other Plaintiffs, he does not specify any representations he saw or upon which he relied. Mr. Aviles also does not allege that he has ever experienced any performance issues with his Mustang. (*Id.* ¶¶ 36–38.)

### 2. Janis Benkle

Plaintiff Benkle is a citizen of California. (Compl. ¶ 16.) She bought a new 2015 Ford Edge on August 23, 2015. (*Id.* ¶ 17.) Like the other Plaintiffs, she does not specify any representations she saw or upon which he relied. Ms. Benkle alleges that she experienced a power loss in her Edge on July 30, 2016 (*Id.* ¶ 23.) She

15

brought her Edge to Ford of Orange, which replaced her throttle body.  (Compl. ¶ 23.)  She does not allege that she paid any money out of pocket for her repair, or that she has experienced any incidents with her Edge since the repair.  (*Id*. ¶¶ 16–23.)

### 3.  James Cowen

Plaintiff Cowen is a citizen of Alabama.  (Compl. ¶ 83.)  He bought a used 2013 F-150 on January 15, 2016.  (*Id*.)  Like the other Plaintiffs, he does not specify any representations he saw or upon which he relied.  Mr. Aviles also does not allege that he has ever experienced any performance issues with his Mustang.  (*Id*. ¶¶ 83–85.)

### 4.  Michael Kelder

Plaintiff Kelder is a citizen of Florida.  (Compl. ¶ 63.)  He bought a new 2014 Mustang on December 23, 2013.  (*Id.*)  Like the other Plaintiffs, he does not specify any representations he saw or upon which he relied.  Mr. Kelder also does not allege that he has ever experienced any performance issues with his Mustang.  (*Id.* ¶¶ 63–65.)

### 5.  Barry Kiery

Plaintiff Kiery is a citizen of Florida.  (Compl. ¶ 60.)  He bought a new 2012 Mustang on February 25, 2012.  Like the other Plaintiffs, he does not specify any representations he saw or upon which he relied.  Mr. Kiery does not allege that he ever experienced any performance issues with his Mustang.  (*Id.* ¶¶ 60–62.)

### 6.  John Kovak

Plaintiff Kovak is a citizen of California.  (Compl. ¶ 24.)  He leased a new 2015 Ford Edge on January 10, 2016.  (*Id.* ¶ 25.)  Like the other Plaintiffs, he does not specify any representations he saw or upon which he relied.  Mr. Kovak alleges that he experienced two (2) power losses in his Edge, on June 1 and 2, 2016.  (*Id.* ¶¶ 31–33.)  Simi Valley Ford was unable to duplicate his complaint.  (*Id.* ¶¶ 32.)  According to Mr. Kovak, Simi Valley Ford replaced his throttle body.  (*Id.* ¶¶ 35.)  Mr. Kovak does not allege that he paid any money out of pocket for his repair, nor

16

that he has experienced any difficulties with his vehicle since the repair. (Compl. ¶¶ 24–35.) Mr. Kovak does allege that he spent $100 to have his Edge towed, and $27.75 for a taxi home from the dealership. (*Id.* ¶¶ 32, 34.) Presumably, he is seeking damages for these expenditures.

### 7.   Edward Kyle

Edward Kyle is a citizen of Florida. (Compl. ¶ 43.) He bought a new 2013 Mustang on September 26, 2012. (*Id.* ¶ 44.) Like the other Plaintiffs, he does not specify any representations he saw or upon which he relied. Mr. Kyle alleges he experienced power loss in his Mustang twice, on May 16, 2016 and again sometime around May 20, 2016. (*Id.* ¶ 50.) He alleges that Lucas Automotive replaced his throttle body for $753.09. (*Id.*) He does not allege that he has experienced any issues with his Mustang since the repair.

### 8.   Joe McGlothin

Joe McGlothin is a citizen of Texas. (Compl. ¶ 74.) He bought a new 2012 Mustang in August of 2011. (*Id.* ¶ 75.) Like the other Plaintiffs, he does not specify any representations he saw or upon which he relied. Mr. McGlothin alleges that, "beginning in early 2015," his Mustang "unexpectedly los[t] power on numerous occasions." (*Id.* ¶ 81.) He alleges that Sam Pack's Five Star Ford "repaired" his Mustang on July 9, 2015 for $759.54. (*Id.* ¶ 82.) He does not allege that he has experienced any issues with his Mustang since the repair.

### 9.   Julio Rojas

Julio Rojas is a citizen of Florida. (Compl. ¶ 51.) He bought a used 2013 Edge from a non-Ford dealer on July 18, 2015. (*Id.* ¶52.) Like the other Plaintiffs, he does not specify any representations he saw or upon which he relied. Mr. Rojas alleges that "around late December 2015" his wife was driving the Edge when it lost power, and that it "failed in the same manner approximately five times over the next

several months." (Compl. ¶ 58.)  At that point, Mr. Rojas engaged in a "round of attempted repairs," the nature of which he does not specify. (*Id.*)[6]  He alleges he then began driving the Edge, which experienced "multiple" incidents. (*Id.*)  In August 2016, Mr. Rojas paid Midway Ford $350.43 for a "replacement throttle body and associated labor." (*Id.* ¶ 59.)  Mr. Rojas does not allege that there have been any incidents with his vehicle since August 2016.

### 10.   Robert Sandler

Robert Sandler is a citizen of California. (Compl. ¶ 39.)  At some unnamed time, he bought a 2013 Ford Edge; the Complaint does not specify whether it was new or used. (*Id.* ¶¶ 39–42.)  Like the other Plaintiffs, he does not specify any representations he saw or upon which he relied.  He alleges that he "experienced Throttle Failures on multiple occasions." (*Id.* ¶ 42.)  He does not, however, allege whether he ever took his Edge in for repair or, if he did, whether the repair was effective.

### 11.   Kelly Suponchick

Kelly Suponchick is a citizen of Nebraska. (Compl. ¶ 66.)  She bought a used 2011 Ford Edge from a non-Ford dealer in August 2013. (*Id.* ¶ 67.)  Like the other Plaintiffs, he does not specify any representations he saw or upon which he relied.  She alleges that she "has experienced the Throttle Defect" on numerous occasions. (*Id.* ¶ 73.)  These experiences "could not be duplicated" by Ford dealers. (*Id.*)  On August 10, 2015, Ms. Suponchick "paid to have her ETB replaced." (*Id.*)  She does not allege that there have been any incidents with her vehicle since August 2015.

In summary, four (4) named Plaintiffs (Aviles, Cowen, Kelder, and Kiery) do not allege that they have experienced *any* difficulty with their throttle bodies.  Two

---

[6] Given that Plaintiffs have generally specified when a throttle body was replaced, it is reasonable to infer these "repairs" did not include replacement.

(2) named Plaintiffs (Benkle and Kovak) allege they experienced power loss, but after a free (presumably in-warranty) repair, they have experienced no further issues.  Four (4) more named Plaintiffs (Kyle, McGlothin, Rojas, and Suponchick) allege that they experienced power loss, but after paying for a (presumably out-of-warranty) repair, they have experienced no further issues.  And, finally, one named Plaintiff (Sandler) does not provide the minimal information necessary to know whether his vehicle was bought new or used, let alone whether it was ever repaired.

Given these alleged facts, the vast majority of Plaintiffs claims fail.

## III.   SUMMARY OF CLAIMS

For the Court's reference, set forth below is a table summarizing the counts asserted in Plaintiffs' Complaint and the named Plaintiffs asserting each count:

| Count | Description of Allegation | Named Plaintiffs |
|---|---|---|
| I | Violation of Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*. | Aviles, Benkle, Cowen, Kelder, Kiery, Kovak, Kyle, McGlothin, Rojas, Sandler, Suponchick |
| II | Breach of Contract and Express UCC Warranty | Aviles, Benkle, Cowen, Kelder, Kiery, Kovak, Kyle, McGlothin, Rojas, Sandler, Suponchick |
| III | Breach of Implied UCC Warranty of Merchantability | Aviles, Benkle, Cowen, Kelder, Kiery, Kovak, Kyle, McGlothin, Rojas, Sandler, Suponchick |

| Count | Description of Allegation | Named Plaintiffs |
|---|---|---|
| IV | Unjust Enrichment | Aviles, Benkle, Cowen, Kelder, Kiery, Kovak, Kyle, McGlothin, Rojas, Sandler, Suponchick |
| V | Violation of Song-Beverly Consumer Warranty Act Breach of Implied Warranty Cal Civ. Code §§ 1790, *et seq.* | Aviles, Benkle, Kovak, Sandler |
| VI | Violation of the Song-Beverly Consumer Protection Act Breach of Express Warranty Cal Civ. Code §§ 1790, *et seq.* | Aviles, Benkle, Kovak, Sandler |
| VII | Violation of California Consumers Legal Remedies Act Cal Bus. & Prof. Code §§ 1750, *et seq.* | Aviles, Benkle, Kovak, Sandler |
| VIII | Violation of the California Unfair Competition Law Cal. Bus. & Prof. Code §§ 17200, *et seq.* | Aviles, Benkle, Kovak, Sandler |
| IX | Fraudulent Omission | Aviles, Benkle, Kovak, Sandler |
| X | Violation of the Florida Deceptive and Unfair Trade Practices Act Fla. Stat. §§ 501.201, *et seq.* | Aviles, Benkle, Kovak, Sandler |
| XI | Fraudulent Omission (Florida) | Kyle, Rojas, Kiery, Kelder |
| XII | Violation of the Nebraska Consumer Protection Act Neb. Rev. Stat. §§ 59-1601, *et seq.* | Suponchick |
| XIII | Fraudulent Omission (Nebraska) | Suponchick |
| XIV | Violation of the Deceptive Trade Practices Act Tex. Bus. & Com. Code §§ 17.41, *et seq.* | McGlothin |
| XV | Fraudulent Omission (Texas) | McGlothin |
| XVI | Breach of Express Warranty Ala. Code §§ 7-2-313 and 7-SA-210 | Cowen |
| XVII | Breach of Implied Warranty of Merchantability Ala Code §§ 7-2-214 and 7-2A-212 | Cowen |

## IV.   ARGUMENT

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a

cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

Additionally, claims sounding in fraud must comply with the heightened pleading requirements of FRCP 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted). FRCP 9(b) "requires more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

A.   **PLAINTIFFS HAVE NOT ALLEGED ESSENTIAL ELEMENTS OF THEIR FRAUD-BASED CLAIMS.**

1.   **Plaintiffs' Fraud-based Allegations Are Too Vague to Meet FRCP 9(b) Scrutiny.**

| Counts | Plaintiffs |
|---|---|
| Counts VII–XV | Aviles, Benkle, Cowen, Kelder, Kiery, Kovak, Kyle, McGlothin, Rojas, Sandler, Suponchick |

The Ninth Circuit has clearly held that fraudulent concealment claims must meet FRCP 9(b)'s heightened pleadings standard. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126–27 (9th Cir. 2009) (plaintiff must plead a fraudulent concealment claim with particularity under Rule 9(b)); *see also Sukonik v. Wright Med. Tech.*, *Inc.*, No. CV 14-08278 BRO (MRWx), 2015 U.S. Dist. LEXIS 177502, at *45−46 (C.D. Cal. Jan. 26, 2015) (same). Similarly, consumer-protection claims grounded in fraud or concealment must also meet Rule 9(b) scrutiny. *Tait v. BSH Home Appliances Corp.*, No. 2:08-CV-0051, 2011 U.S. Dist. LEXIS 10384, at *5 (C.D. Cal., Aug. 31, 2011) (Carter, J.).

Here, Plaintiffs' various fraudulent omission and consumer-protection claims contain numerous allegations that do not rise to the level of specificity required by Rule 9(b). Plaintiffs make repeated references to "promotional materials" that they reviewed. (Compl. ¶¶ 20, 28, 37, 47, 54, 61, 64, 70, 78, 84.) However, they never allege what the specific *contents* of those promotional materials were, meaning this Court has no way to determine if the materials they saw were incomplete and inaccurate. This is why the Central District of California has held that, even in omission cases, "Plaintiff must plead facts demonstrating that he was actually exposed to the 'incomplete and inaccurate' promotional materials and found them to be 'material' in selecting" an allegedly defective product. *Sukonik*, 2015 U.S. Dist.

LEXIS 177502, at *49 (dismissing fraudulent omission claims for failure to meet Rule 9(b) scrutiny).

Since Plaintiffs have not identified with specificity which materials they claim omitted material information, they cannot currently assert these fraud-based claims.  As a result, these claims should be dismissed.

## 2.  Various Plaintiffs Were Not Injured by Any Concealment of the Alleged Defect.

| Counts | Plaintiffs |
|---|---|
| Counts VII–XIII | Aviles, Benkle, Cowen, Kelder, Kiery, Kovak |

Plaintiffs' theory of injury for their fraud-based claims is simple: because Ford allegedly concealed the existence of the alleged ETB defect, Plaintiffs paid an "inflated purchase price" for their vehicles.  (*See* Compl. ¶¶ 243 (Count VII, "inflated purchase price"), 248 (Count VIII, Plaintiffs "would not have paid as much" for vehicles), 255 (Count IX, Plaintiffs "paid too much"), 268 (Count X, Plaintiffs "paid inflated purchase prices"), 277 (Count XI, Florida Plaintiffs "paid too much"), 290 (Count XII, Nebraska Plaintiff "paid inflated purchase prices"), 299 (Count XIII, Nebraska Plaintiff "paid too much").)

Each of these named Plaintiffs, however, either experienced *no* malfunction in their vehicles to date, or received a free warranty repair, after which they have experienced no malfunctions.  (*See* Compl. ¶¶ 36–38 (Aviles, no malfunction), 16–23 (Benkle, no post-replacement malfunction), 83–85 (Cowen, no malfunction), 63–65 (Kelder, no malfunction), 60–62 (Kiery, no malfunction), 24–35 (Kovak, no post-replacement malfunction).)  According to their own Complaint allegations, all of these named Plaintiffs have received exactly what they believed they were buying: a vehicle with a functioning ETB.  Therefore, they cannot have been harmed by any alleged omission, concealment, or deceptive act.  *See, e.g.*, *Pfizer,*

*Inc. v. Farsian*, 682 So. 2d 405, 407 (Ala. 1996) (holding that plaintiff had no cause of action for fraud because his "concern that his heart valve, which is presently functioning normally, could later malfunction is not an injury recognized by Alabama law").

### 3. Ford Did Not Have a Duty to Disclose the Alleged Defect.

| Counts | Plaintiffs |
|---|---|
| Counts X, XI, XIV, XV | Kelder, Kiery, Kyle, McGlothin, Rojas |

"A cause of action based on alleged omissions can lie only where a Defendant has a duty to make disclosures." *Tait*, 2011 U.S. Dist. LEXIS 10384, at *6.

The duty to disclose varies from state to state. In Florida and Texas, one essential element of a fraudulent omission or concealment claim is a duty to disclose. *Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*, No. 5:05-cv-260-Oc-GRJ, 2008 WL 3200286, at *3 (M.D. Fla. Aug. 6, 2008); *Seibert v. Gen. Motors Corp.*, 853 S.W.2d 773, 778 (Tex. App. 1993). In Florida, such a duty arises from a fiduciary or confidential relationship or a partial disclosure of relevant facts. *Taylor, Bean & Whitaker Mortg. Corp.*, 2008 WL 3200286, at *3. And in Texas, it may only arise out of a fiduciary or confidential duty. *Seibert*, 853 S.W.2d at 778. In neither of these states does a duty arise from a "superior knowledge" of the facts unless the transaction involves a direct transaction between a seller and a buyer. *See Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 235–36 (S.D.N.Y. 2015) (analyzing duty to disclose in various states).

Here, Plaintiffs have not alleged (because they could not) any fiduciary relationship, special circumstances, or inquiry by any individual named Plaintiff. Therefore, they cannot show a duty to disclose under Florida or Texas law, and those fraudulent concealment/omission claims should be dismissed. *See Garcia*, 127 F. Supp. 3d at 236 (dismissing fraudulent concealment/omission claims under

relevant laws because plaintiffs did not allege facts supporting relevant duty to disclose).

### 4.    Ford's Warranty Discloses the Potential for a Defect.

| Counts | Plaintiffs |
|---|---|
| Counts VII-XV | Aviles, Benkle, Cowen, Kelder, Kiery, Kovak, Kyle, McGlothin, Rojas, Sandler, Suponchick |

It is a truism that "[d]efects can, and do, arise with complex instrumentalities such as automobiles." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 794 (N.J. 2005).   This explains why motor vehicle manufacturers uniformly provide warranties, why those warranties are limited by both time and mileage, and why many consumers routinely buy extended warranties that provide additional protection against the things they know might go wrong.   Indeed, warranties are "a recognition of potential defects (in a statistical sense, the inevitability of defects) in the seller's product and an allocation of risk associated with such defects." *Neuser v. Carrier Corp.*, No. 06-C-645-S, 2007 U.S. Dist. LEXIS 9663, at *12 (W.D. Wis. Feb. 9, 2007).   The warranty provided by Ford in this very case—and that Plaintiffs contend formed part of the basis of the bargain—expressly advised consumers that:

> This warranty *does not mean that each Ford vehicle is defect free*. Defects may be unintentionally introduced into vehicles during the design and manufacturing processes and such defects could result in the need for repairs. For this reason, Ford provides the New Vehicle Limited Warranty in order to remedy any such defects that result in vehicle part malfunction or failure during the warranty period.

(Ex. A at 14 (emphasis added).)

According to J.D. Power, for example, the vehicles that were ranked *highest* for dependability (as in, experienced the fewest problems) in 2016 still experienced 110 problems per 100 vehicles; the industry *average* was 134 problems per 100 vehicles. (*See* http://www.jdpower.com/press-releases/2017-vehicle-dependability-study (last visited May 19, 2017).) No manufacturer makes point-of-sale disclosures of these issues, no reasonable consumer expects the leading vehicles to disclose 110 potential issues at point of sale, and no reasonable consumer would be deceived by the absence of 110 point-of-sale disclosures. *See Munch v. Sears Roebuck & Co.*, No. 06 C 7023, 2007 U.S. Dist. LEXIS 62897, at *8 (N.D. Ill. Aug. 27, 2007) ("Since it is understood that some percentage of all mass-produced complex machines will fail, [Plaintiffs' nondisclosure] allegation[s] [are] insufficient to state a claim."). Indeed, requiring disclosures for all potential issues within a given vehicle would lead to long lists of issues that might never arise, diminishing the usefulness of any information the buyer receives.

Nor do Plaintiffs' "safety" allegations explain why any alleged omission was misleading to a reasonable consumer. (Compl. ¶¶ 97–103.) If a manufacturer has determined that a defect warranting a safety recall exists, reasonable consumers would not expect it to continue to sell the vehicle with a disclosure; they would rightly expect the manufacturer to repair any unsold vehicles prior to sale (and to recall and repair previously sold vehicles). This is exactly what the National Highway Traffic Safety Act requires with respect to "defects related to motor vehicle safety." 49 U.S.C. §§ 30116(a), 30118(c)(1), 30120(a).

On the other hand, if a manufacturer has determined that a safety recall is *not* warranted, reasonable consumers would expect no disclosure *at all*, either before or after sale. For example, reasonable consumers could not expect manufacturers to disclose a closed safety investigation that resulted in a decision that no recall was warranted (such as the Preliminary Evaluation here), nor could they expect disclosure of a pending safety investigation which had not yet been completed.

1    Requiring disclosures of each potential, repairable defect would quickly

2    swamp the consumer in noise, completely undermining the intent of requiring the

3    disclosure in the first place.  As a result, Ford cannot be held liable for failing to

4    make them.

5         B.    PLAINTIFFS' EXPRESS WARRANTY CLAIMS

6    There are two (2) ways in which the Plaintiffs allege that Ford breached its

7    express warranties, neither of which supports their causes of action in this case.

8    First, Plaintiffs contend that, under the various states' relevant statutory

9    commercial codes and consumer protection express warranty provisions, Ford

10   expressly warranted that its vehicles were safe, thereby inducing Plaintiffs to buy or

11   lease their vehicles.  (*See, e.g.*, Compl. ¶ 177 ("Ford's misrepresentations and

12   omissions alleged herein caused Plaintiff and the other Class members to enter into

13   their agreements to purchase or lease the Defective Vehicles.").)   These are

14   "affirmation-based" warranty claims.

15   Second, Plaintiffs contend that Ford breached its express warranties by failing

16   to repair their allegedly defective vehicles.  (Compl. ¶ 196 (Ford breached express

17   warranty "each time its authorized service representatives failed to properly repair,

18   replace, or adjust malfunctioning Defective Vehicles to a non-defective state.").")[7]

19   These are "repair-based" warranty claims.

20   _____

21   [7] Plaintiffs also allege that Ford breached its express warranty "[e]ach time it failed
to authorize its service representatives to perform adequate repairs on Defective

22   Vehicles and instead instructed its representatives to perform temporary, inadequate

23   repairs to mask the underlying defects until after the expiration of the implied

24   warranty of merchantability."  (Compl. ¶ 182.)  Presumably, this refers to the fact
that Ford authorized replacement of the throttle body if presented under warranty.

25   (*Id.* ¶ 108.)  The allegation in Paragraph 182 of the Complaint is wholly conclusory;
Plaintiffs have offered no reason to believe that Ford's instructions to replace a

26   malfunctioning throttle body were an attempt to "mask the underlying defects"

27   rather than a legitimate repair.

28

Because Plaintiffs have not pointed to any specific affirmations of fact, and because those Plaintiffs who experienced potential throttle body issues had them resolved, no Plaintiffs have an express warranty claim.

## 1. Plaintiffs' Affirmation-Based Warranty Claims Do Not Identify Any Affirmation of Fact.

| Counts | Plaintiffs |
|---|---|
| Count II | Aviles, Benkle, Cowen, Kelder, Kiery, Kovak, Kyle, McGlothin, Rojas, Sandler, Suponchick |
| Count VI | Aviles, Benkle, Kovak, Sandler |
| Count XVI | Cowen |

All of the named Plaintiffs have asserted at least one affirmation-based warranty claim. (*See* Compl. ¶¶ 177 (Count II - Breach of Contract and Express Uniform Commercial Code ("UCC") Warranty); 299 (Count VI - Breach of Express Warranty under California Song-Beverly Consumer Protection Act), 324 (Count XVI - Breach of Express Warranty under Alabama Commercial Code).)

Alabama, California, Florida, Nebraska, and Texas are united in holding that an affirmation-based warranty claim requires a specific *affirmation* of fact; a general allegation of a mere omission of facts will not suffice. *See* Ala. Code § 7-2-313 (express warranty requires "affirmation of fact or promise"); *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1008 (S.D. Cal. 2011) (applying California law; "Because . . . Plaintiffs have not specifically alleged which representations they saw, heard, or read, Plaintiffs have not sufficiently pled which affirmations or promises formed the 'basis of their bargain.'"); *Borchardt v. Mako Marine Int'l, Inc.*, No. 08-61199-CIV-MARRA, 2011 U.S. Dist. LEXIS 55150, at *5 (S.D. Fla. May 24, 2011) (dismissing complaint under Florida law where "it does not specify where, when and in what context the alleged warranty statements were

made."); *Freeman v. Hoffman-La Roche, Inc*., 618 N.W.2d 827, 844 (Neb. Ct. App. 2000) (affirming dismissal of express warranty claim where plaintiff identified no affirmation); *Gedalia v. Whole Foods Mkt. Servs., Inc*., 53 F. Supp. 3d 943, 960 (S.D. Tex. 2014) (dismissing express warranty claim under Texas law because "Plaintiff has failed to show an affirmation was made").

Here, because none of the named Plaintiffs point to any specific affirmations that would form the basis of the bargain for an express, their express warranty claims should be dismissed.

### 2. Various Plaintiffs Were Not Injured by the Alleged Defect.

The inconvenient yet unavoidable fact in this litigation is that no Plaintiff has been injured by the alleged defect. Four (4) of the Plaintiffs have never experienced the alleged problem at all. Six (6) more have obtained a repair that appears to have eliminated the issue for them. Under these facts, Plaintiffs simply cannot assert claims for breach of the express warranty.

### a. Plaintiffs who did not experience manifestations cannot allege express warranty claims under their respective state's laws.

| Counts | Plaintiffs |
|---|---|
| Counts II, VI | Aviles |
| Counts II, XVI | Cowen |
| Count II | Kelder, Kiery |

Four (4) named Plaintiffs (Aviles, Cowen, Kelder, and Kiery) do not allege that they have experienced *any* difficulty with their throttle bodies. (*See* Compl. ¶¶ (36–38 (Aviles), 83–85 (Cowen), 63–65 (Kelder), 60–62 (Kiery).) The logical

inference is that these four (4) Plaintiffs did not experience any power loss in their vehicles.

These Plaintiffs assert claims under Alabama (Cowen) law, California (Aviles) law, and Florida (Kelder, Kiery) law.  The lack of manifestation prevents each of these Plaintiffs from asserting a breach-of-warranty claim.

Under Alabama law, an express "repair and replace" warranty like Ford's does not guarantee the vehicle is defect-free; instead, it merely promises to repair any defects that arise.  *Hughes v. Hertz Corp.*, 670 So. 2d 882, 886 (Ala. 1995). Plaintiff Cowen's sole allegation supporting his breach of express warranty claim is that his vehicle contains the allegedly defective throttle body.  This is not enough to assert a breach of express warranty claim under Alabama law.

Under California law, a plaintiff must allege that her own vehicle suffered from a manifestation of the alleged defect in order to file a breach of warranty claim. *Gertz v. Toyota Motor Corp.*, CV 10-1089, 2011 U.S. Dist. LEXIS 94183, at *17 (C.D. Cal. Aug. 22, 2011) ("[B]ecause Plaintiffs do not allege that *their* Prius suffered from any defects relating to the fuel gauge, this cannot serve as the predicate for their implied warranty claim.") (emphasis in original); *see also Davidson v. Apple, Inc.*, No. 16-CV-4942, 2017 U.S. Dist. LEXIS 36524, at *38–43 (N.D. Cal. May 4, 2012) (dismissing breach of express warranty claims because plaintiffs allege a defect that manifested itself outside the warranty period). Therefore, Plaintiffs like Mr. Aviles cannot rely on the power loss in others' Fords to support his claim for breach of warranty.

Under Florida law, a plaintiff asserting a breach of express warranty claim must allege that the defect manifested during the applicable warranty period. *Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434–35 (11th Cir. 2009) (dismissing warranty claims under Florida law); *see also Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528, 542 (S.D. W. Va. 2014) (dismissing Florida express warranty claim where plaintiff had not suffered any manifestation of the alleged defect).  Plaintiffs Kelder

30

1  and Kiery have not alleged *any* alleged power loss, let alone one that occurred

2  during the applicable warranty period.  Therefore, they cannot assert a breach of

3  express warranty claim.

4                **b.     Plaintiffs who had their vehicles successfully**

5                        **repaired under warranty cannot allege breach-of-**

6                        **express warranty claims under their California law.**

| Counts | Plaintiffs |
|---|---|
| Counts II, VI | Benkle, Kovak |

10     Two (2) Plaintiffs (Benkle and Kovak) allege that their vehicles were

11  "repaired" or their ETBs were replaced.  Neither of these plaintiffs have alleged that

12  they paid for their repairs, and neither has alleged vehicles experienced any issues

13  after these repairs.  (Compl. ¶¶ 16–23 (Benkle), 24–35 (Kovak).)

14     Put simply, these plaintiffs do not have a warranty claim because Ford

15  honored its express warranty.  "To succeed on a claim for breach of express

16  warranty under California law, a plaintiff must establish (1) that the seller's

17  statement amounts to an affirmation of fact or promise relating to the goods sold; (2)

18  that the affirmation or promise was part of the basis of the bargain; (3) *that the seller*

19  *breached the warranty*; and (4) that the breach harmed the plaintiff."  *Gertz*, 2011

20  U.S. Dist. LEXIS 94183, at \*6–7 (citing *Shein v. Canon U.S.A., Inc.*, No. 08-07323-

21  CAS, 2009 U.S. Dist. LEXIS 94109, at \*7–8 (C.D. Cal. Sept. 22, 2009)).

22  "Additionally, in the context of automobile warranties, courts have held that an

23  express warranty is not considered breached unless and until the defendant refuses

24  or fails to repair."  *Id.* (citing *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d

25  1190, 1198 (N.D. Ga. 2005) ("It is the refusal to remedy within a reasonable time, or

26  a lack of success in the attempts to remedy which would constitute a breach of

27  warranty.")).

28

A problem occurred in the Plaintiffs' vehicles, they brought their vehicles in for repair, they obtained the repair free of cost, and to date they have experienced no further issues.

To obscure the fact that they received exactly what their warranties promised, these Plaintiffs allege that the repairs they received were "temporary, inadequate repairs to mask the underlying defects until after the expiration of the Limited Warranty." (Compl. ¶¶ 182.)  This allegation finds no support in the experiences of these two (2) named Plaintiffs as neither alleges that they experienced any issues with their vehicles after Ford replaced their ETBs.

### c.    Plaintiffs who had their vehicles repaired out of warranty cannot allege breach of express warranty claims under their respective state's laws.

| Counts | Plaintiffs |
|---|---|
| Count II | Kyle, McGlothin, Rojas, Suponchick |

Plaintiffs allege that Ford breached its 36-month, 36,000-mile express warranty.[8]  Four (4) named Plaintiffs, however, allege that Ford breached its express

---

[8] Plaintiffs allege that Ford's ETB was covered under its Powertrain Warranty, which "covers engine and powertrain components, including the throttle body, against defects in materials and workmanship for 60 months after the warranty start date or 60,000 miles." (Compl. ¶ 179.)  This is factually incorrect.  As the attached warranty shows, the Powertrain Warranty's extended coverage applied to:

> **Engine:** all internal lubricated parts, cylinder block, cylinder heads, electrical fuel pump, powertrain control module, engine mounts, flywheel, injection pump, manifold (exhaust and intake), manifold bolts, oil pan, oil pump, seals and gaskets, engine thermostat, engine thermostat housing, timing chain cover, timing chain (gears or belt), turbocharger/supercharger unit, valve

warranty because they had to pay for out-of-warranty repairs.  (*See* Compl. ¶¶ 50 (Kyle), 82 (McGlothin), 59 (Rojas), 73 (Suponchick).  They do not allege that they have experienced any issues after their vehicles were repaired.  (*Id.* ¶¶ 43–50 (Kyle), 74–82 (McGlothin), 51–59 (Rojas), 66–73 (Suponchick).)   These facts establish successful repairs, which bar recovery for breach of express warranty.

Under Florida law, a plaintiff asserting a breach of express warranty claim must allege that the defect manifested during the applicable warranty period. *Brisson*, 349 F. App'x at 434 (dismissing warranty claims under Florida law). Plaintiffs Kyle and Rojas had their vehicles repaired after the warranty had expired. (Compl. ¶¶ 43, 50 (Kyle bought his Mustang in 2012, and it was repaired in 2016), 52, 59 (Rojas owned a 2013 Edge, and it was repaired in August 2016).)  Therefore, they have no express warranty claim.

Nebraska courts have apparently not needed to rule on a plaintiff seeking reimbursement for repairs conducted out of warranty.  There is no reason, though, to

---

covers, water pump;

**Transmission:** all internal parts, clutch cover, seals and gaskets, torque converter, transfer case (including all internal parts), transmission case, transmission mounts;

**Front-Wheel Drive:** axle shafts, front bearings, seals and gaskets, universal and constant velocity joints;

**Rear-Wheel Drive:** axle shafts, rear bearings, center support bearing, drive axle housing (including all internal parts), drive shaft, retainers, supports, seals and gaskets, universal and constant velocity joints.

(Ford 2015 Warranty Guide, attached as Ex. A, at 16.)  The throttle body is not covered under either the engine or transmission coverage for the PowerTrain Warranty.  Therefore, it is covered by Ford's 36-month, 36,000-mile warranty.

believe that the Nebraska Supreme Court would find a manufacturer liable for breach of warranty after the warranty had expired. This is the request Plaintiff Suponchick has made of this Court. (Compl. ¶¶ 67, 73 (Suponchick owned a 2011 Edge, and it was repaired in 2015).)

Under Texas law, a plaintiff cannot recover for a vehicle failure that occurs outside the warranty period, under either a breach of warranty or an unjust enrichment claim. *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 879 (S.D. Ohio 2012) (applying Texas law; dismissing out-of-warranty costs asserted under unjust enrichment claim). Plaintiff McGlothin had his vehicle repaired after his warranty had expired. (Compl. ¶¶ 75 (bought in August 2011), 82 (repaired July 2015).) Therefore, he cannot assert a breach of warranty claim.

Since these Plaintiffs' repairs occurred after Ford's warranty had expired, and since they appear from the Complaint to have been successful, these Plaintiffs' breach of express warranty claims should be dismissed.

**d.      Plaintiffs who did not present their vehicles for repair cannot allege breach of warranty claims under their states' laws.**

| Counts | Plaintiffs |
|---|---|
| Count II | Aviles, Cowen, Kelder, Kiery, Sandler |
| Count VI | Aviles, Sandler |
| Count XVI | Cowen |

Various Plaintiffs, including Aviles, Cowen, Kelder, Kiery, and Sandler, have not alleged that they presented their vehicles for repair under Ford's Limited Express Warranty.

Since Ford's Limited Express Warranty is a repair-and-replace warranty, Plaintiffs cannot allege that Ford breached it if they never presented their vehicles for repairs.   Five (5) named Plaintiffs—Aviles, Cowen, Kelder, Kiery, and Sandler—have not alleged they ever brought their vehicles in for repair.  Florida law (which applies to Kelder, Kiery, and Sandler) is clear that this disqualifies them from bringing an express warranty claim.  *See Brisson*, 349 F. App'x at 434 (affirming dismissal of express warranty claim under Florida law where "plaintiffs failed to allege that they ever presented their vehicles to a Ford dealership for repair or that the Ford dealership failed to make the repair.").  California agrees.  *See, e.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 970 (N.D. Cal. 2014) (dismissing claims for breach of express warranty under California law because plaintiffs did not plead that they presented their cars to defendant to repair).  While Alabama courts have apparently never had to rule on a warranty claim where the plaintiff did not ask for a repair, the logic behind Florida and California law applies equally well: a plaintiff cannot accuse a manufacturer of breaching a repair-and-replace warranty of which he did not take advantage.

### 3.   Plaintiffs Who Did Not Provide Notice of Breach When Required Cannot Assert Express Warranty Claims.

| Counts | Plaintiffs |
|---|---|
| Count II | Cowen, Kelder, Kyle, McGlothin, Rojas, Kelder |
| Count XVI | Cowen, Kelder |

Several states, including Alabama, Florida, and Texas, will not allow a breach of warranty claim to proceed without individual notice of the alleged breach.

- Alabama law requires a plaintiff to affirmatively plead that he gave notice of the breach to the defendant.  *Smith v. Apple, Inc.*, Civ. Action No. 08-AR-1498-S, 2009 WL 3958096, at *1 (N.D. Ala. Nov. 4, 2009) ("Affirmatively

35

pleading notice is critical to the stating of a claim for breach of warranty under Alabama law."); *see also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 974–75 (dismissing Alabama plaintiff's breach of warranty claims for lack of notice).

- Florida law bars warranty claims brought without notice from the plaintiff. *Hapag-Lloyd, A.G. v. Marine Indem. Ins. Co. of Am.*, 576 So. 2d 1330, 1331– 32 (Fla. Ct. App. 1991). Constructive notice is insufficient. *See Willard v. Home Depot, U.S.A., Inc*., No. 5:09-cv-110/RS-MD, 2009 U.S. Dist. LEXIS 113493, at *8 (N.D. Fla. Dec. 7, 2009).

- Texas law requires an affirmative pleading of notice. *McKay v. Novartis Pharm. Corp.,* 751 F.3d 694, 705 (5th Cir. 2014) (under Texas law, the "burden of alleging and proving proper notice is on the buyer, and failure to notify the seller of the breach, thereby allowing the seller an opportunity to cure, bars recovery on the basis of breach of warranty") (internal quotations omitted); *see also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 978 (dismissing Texas plaintiffs' breach of warranty claims for lack of notice).

None of the Plaintiffs from these states has alleged that they provided Ford with notice of its alleged breach of warranty. In fact, only one named plaintiff— Aviles of California—alleges that he provided Ford with actual notice of its breach of warranty. (*See* Compl. ¶ 327 ("Plaintiff Aviles, individually and on behalf of the other Class members, notified Ford of the Throttle Defect, and its corresponding breach of warranties, through a notice letter dated December 14, 2016, and delivered by Federal Express to Ford Motor Company in Dearborn, Michigan."). Plaintiff Aviles's notice is sufficient to allow *him* to bring a breach of warranty claim, but it cannot substitute for notice from the other Plaintiffs under their own states' laws.

C.     PLAINTIFFS' IMPLIED WARRANTY CLAIMS ARE NOT LEGALLY SUFFICIENT.

1.     **Plaintiffs Who Did Not Experience Manifestations Cannot Allege Implied Warranty Claims Under Their States' Laws.**

| Counts | Plaintiffs |
|---|---|
| Counts III, V, XVII | Aviles, Cowen, Kelder, Kiery |

Four (4) named Plaintiffs (Aviles, Cowen, Kelder, and Kiery) do not allege that they have experienced *any* difficulty with their ETBs.  (*See* Compl. ¶¶ (36–38 (Aviles), 83–85 (Cowen), 63–65 (Kelder), 60–62 (Kiery).)  The logical inference is that these Plaintiffs did not experience any power loss in their vehicles.

These four (4) Plaintiffs assert claims under Alabama (Cowen) law, California (Aviles) law, and Florida (Kelder, Kiery) law.  The lack of manifestation prevents each of these Plaintiffs from asserting a breach of implied warranty claim. *See Farsian*, 682 So. 2d at 407 ("Although the facts . . . indicate that the Bjork-Shiley heart valve has experienced problems with strut failures, Farsian's concern that his heart valve, which is presently functioning normally, could later malfunction is not an injury recognized by Alabama law."); *Taragan v. Nissan N. Am. Co., Ltd.*, No. C 09-3660, 2013 U.S. Dist. LEXIS 87148, at *12–13 (N.D. Cal. Jun. 20, 2013) ("In asserting a warranty claim, however, it is not enough to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that their product *actually exhibited the alleged defect*.") (emphasis in original) in(citation omitted); *Belville*, 13 F. Supp. 3d at 542 (Florida warranty law does not allow non-manifestation claims).

**2.     Plaintiffs     Who     Received     In-Warranty     ETB
Replacement Cannot Assert Implied Warranty Claims.**

| Counts | Plaintiffs |
|---|---|
| Counts III, V | Benkle, Kovak |

Two (2) Plaintiffs (Benkle and Kovak) allege that their vehicles were "repaired" or their ETBs were replaced. Neither of these plaintiffs have alleged that they paid for their repairs, and neither has alleged vehicles experienced any issues after these repairs. (Compl. ¶¶ 16–23 (Benkle), 24–35 (Kovak).)

Under California law, there is no breach of any implied warranty where the vehicle is "roadworthy in its present condition without any repairs." *Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593-BRO (PJWg), 2017 U.S. Dist. LEXIS 67525 (C.D. Cal. Apr. 13, 2017) (quoting *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1548, 173 Cal. Rptr. 3d 454 (Cal. Ct. App. 2014)). These two (2) Plaintiffs' implied warranty claims fail because neither alleges that their repaired vehicle is not "roadworthy in its present condition." *Id.*

**3.     Plaintiffs Who Bought Used Vehicles Cannot Assert
Implied Warranty Claims**

| Counts | Plaintiffs |
|---|---|
| Counts III, V, VXII | Aviles, Cowen, Rojas, Suponchick |

For most states that have adopted the UCC, the implied warranty of merchantability applies to the relationship between the immediate seller and the buyer. Some—but not all—states make exceptions for manufacturers and distributors on the initial sale (in other words, Ford's implied warranty will apply to the new car buyer, not just its dealer), but rarely if ever do they extend those exceptions to buyers in the secondhand market. As a result, the used-car buyers in

this action cannot assert breach of implied warranty claims against Ford. Specifically:

- Mr. Aviles bought his 2012 Mustang used.  Under California law, he therefore cannot assert an implied warranty claim.  *Clemens v. DaimlerChrysler Corp*., 534 F.3d 1017, 1023 (9th Cir. 2008) (holding that "a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant," which exists only when plaintiff and defendant "are in adjoining links of the distribution chain").

- Mr. Cowen bought his 2013 F-150 used.  Under Alabama law, he therefore lacks the privity required for a breach of implied warranty claim.  *Ex parte Gen. Motors Corp*., 769 So. 2d 903, 910 (Ala. 1999) (implied warranties are applicable only to sellers, not to manufacturers); *Morris Concrete, Inc. v. Warrick*, 868 So. 2d 429, 435 (Ala. Civ. App. 2003) (same).

- Mr. Rojas bought his 2013 Edge used.  Under Florida law, he is barred from asserting a breach of implied warranty claim.  *Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 894–95 n.1 (11th Cir. 2006) ("Under Florida law, privity of contract is an essential element of a claim for breach of implied warranty,"); *see also Jovine v. Abbott Labs, Inc*., 795 F. Supp. 2d 1331, 1341 (S.D. Fla. 2011) ("[P]ursuant to Florida law, 'a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity.'").

- Ms. Suponchick bought her 2011 Edge used from Siemer Auto Center.  There is no Nebraska law on point, but the logic of the privity requirement holds here.  Warranties are granted by the seller, and a non-Ford used car dealership sold Ms. Suponchick her vehicle, not Ford.  (Compl. ¶ 67.)

D.     PLAINTIFFS' CLAIMS UNDER THE MAGNUSON MOSS WARRANTY ACT

| Count | Plaintiffs |
|-------|-----------|
| Count I | Aviles, Benkle, Cowen, Kelder, Kiery, Kovak, Kyle, McGlothin, Rojas, Sandler, Suponchick |

Plaintiffs allege claims in Count I under the Magnuson-Moss Warranty Act. 15 U.S.C. §§ 2301, *et seq.*  (Compl. ¶¶ 159–73).  "Claims under the Magnuson-Moss Warranty Act 'stand or fall with . . . express and implied warranty claims under state law.'"  *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1227 (9th Cir. 2015) (quoting *Clemens*, 534 F.3d at 1022).  Therefore, to the extent that a named Plaintiff's state law express and implied warranty claims fail (as discussed above in Sections III.B and III.C), those claims likewise fail under the Magnuson-Moss Warranty Act.

E.     PLAINTIFFS' UNJUST ENRICHMENT CLAIMS.

1.     **Various Plaintiffs Did Not Confer an Unfair Benefit on Ford Motor Company.**

| Counts | Plaintiffs |
|--------|-----------|
| Counts IV | Aviles, Benkle, Cowen, Kelder, Kiery, Kovak, Rojas, Suponchick |

As discussed in greater detail above, the named Plaintiffs who experienced no malfunction—or have had their vehicles repaired under warranty—have not "overpaid" for their vehicles.  Those who never experienced a power loss have received the exact cars they allegedly paid for.  Those who received a free throttle body replacement and experienced no further incident have obtained the value of a functioning throttle body from Ford—the exact amount they alleged was unjustly retained.  *See Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (Cal. 1996) (under California

40

law, retaining benefit must be unjust); *Baron v. Osman*, 39 So. 3d 449, 451 (Fla. App. 2010) (under Florida law, elements of unjust enrichment include benefit conferred and benefit retained); *Trieweiler v. Sears*, 689 N.W.2d 807, 834 (Neb. 2004) ("Unjust enrichment requires restitution, which measures the remedy by the gain obtained by the defendant, and seeks disgorgement of that gain."). Therefore, Plaintiffs Aviles, Cowen, Kelder, and Kiery's unjust enrichment claims must be dismissed because their throttle bodies have never malfunctioned. (*See* Compl. ¶¶ (36–38 (Aviles), 83–85 (Cowen), 63–65 (Kelder), 60–62 (Kiery).)   Similarly, Plaintiffs Benkle and Kovak's claims must be dismissed because they received functioning replacement throttle bodies, meaning Ford did not retain any benefit. (Compl. ¶¶ 16–23 (Benkle), 24–35 (Kovak).)

In addition, used car purchasers conferred a benefit on their dealers, but *not* on Ford, which was paid for the new vehicle only.  *See Gerstle v. Am. Honda Co., Inc.*, No. 16-cv-04384-JST, 2017 U.S. Dist. LEXIS 62809, at *41 (N.D. Cal. Apr. 25, 2017) ("[T]he third-party seller, not the manufacturer, receives a benefit when a used car is purchased in an arm's length transaction."); *see also In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d at 843–44 (dismissing unjust enrichment claims under Florida law because used car buyer could not show that he conferred a direct benefit on the manufacturer). As a result, Plaintiffs Aviles, Cowan, Rojas, and Suponchick's unjust enrichment claims must be dismissed.  (Compl. ¶¶ 36 (Aviles bought used Mustang), 83 (Cowan bought used F-150), 52 (Plaintiff Rojas bought used Edge from non-Ford dealer), 67 (Plaintiff Suponchick bought used Edge from non-Ford dealer).)

### 2. California Plaintiffs Have No Cause of Action for Unjust Enrichment.

| Counts | Plaintiffs |
|--------|------------|
| Count IV | Aviles, Benkle, Kovak, Sandler |

Unjust enrichment is not an independent cause of action in California. *See In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 U.S. Dist. LEXIS 32287, at *21 (N.D. Cal. Mar. 12, 2014) ("California, among other jurisdictions, has rejected independent unjust enrichment claims."). Therefore, Plaintiffs Aviles, Benkle, Kovak, and Sandler have no claim for unjust enrichment.

### 3. The Nebraska Plaintiff Is Barred by the Existence of an Express Written Warranty Document.

| Counts | Plaintiffs |
|--------|------------|
| Count IV | Suponchick |

Nebraska law does not allow the assertion of an unjust enrichment claim when there is an express written contract (like a written warranty) covering the same subject matter. *See In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, MDL No. 1920, No. 8:07cv298, 2008 U.S. Dist. LEXIS 109978, at *47 (D. Neb. Nov. 7, 2008) (dismissing unjust enrichment claims because "Plaintiffs' claims for unjust enrichment are barred by the express, written warranty agreement"). Therefore Ms. Suponchick cannot assert a claim for unjust enrichment in this case.

## V.   CONCLUSION

For all the reasons set forth above, Ford respectfully moves the Court to dismiss all of the counts in Plaintiffs' Complaint, except for Counts III with respect to named Plaintiffs Kyle and McGlothin, and Count IV with respect to named Plaintiffs Kyle, McGlothin, and Sandler.

1   Dated: July 31, 2017

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Joan S. Dinsmore*

By:   Joan S. Dinsmore

Derek H. Swanson (*pro hac vice*)
dswanson@mcguirewoods.com
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775-1081
Facsimile: (804) 698.2258

Joan S. Dinsmore (SBN 245629)
jdinsmore@mcguirewoods.com
**MCGUIREWOODS LLP**
434 Fayetteville Street
Suite 2600
Raleigh, North Carolina 27601
Telephone:  (919) 755-6693
Facsimile: (919) 755-6592

Laura G. Brys
lbrys@mcguirewoods.com
**MCGUIREWOODS LLP**
1800 Century Park East 8th Floor
Los Angeles, CA 90067
Telephone: 310-315-8226
Facsimile: 310-956-3167

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO
DISMISS CERTAIN CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT