Derek H. Swanson (*pro hac vice*)
dswanson@mcguirewoods.com
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
Telephone: (804) 775.1081
Facsimile: (804) 698.2258

[*Additional Counsel Listed in Signature Block*]

Attorneys for Defendant Ford Motor Company

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| JANIS BENKLE, JOHN KOVAK, EDWARD KYLE, JULIO ROJAS, KELLY SUPONCHICK, JOE MCGLOTHIN, FERNANDO AVILES, BARRY KIERY, MICHAEL KELDER, JAMES COWEN, ROBERT SANDLER, AND SILVIA FRANCO, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> FORD MOTOR COMPANY, <br><br> Defendant. | Case No.:  8:16-cv-01569-DOC-JCG <br><br> **REPLY IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS CERTAIN CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT** <br><br> Date:  Monday, October 16, 2017 <br> Time:  8:30 a.m. <br> Location:  Ronald Reagan Building <br> United States Courthouse <br> 411 West Fourth Street <br> Santa Ana, CA 92701 <br> 9th Floor, Courtroom 9D |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................... 1

II.   ARGUMENT .......................................................................................... 3

    A.    PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED ANY
        FRAUD-BASED CLAIMS ............................................................ 3

        1.   Plaintiffs Did Not Allege Fraudulent Omission with the
            Required Particularity ................................................... 4

            a.   Plaintiffs Have Not Plausibly Established
                Knowledge by Ford of a Defect in Plaintiffs'
                Vehicles at the Time of Sale ................................ 5

            b.   Plaintiffs Have Not Plausibly Alleged a Safety-
                Related Defect ..................................................... 9

            c.   Plaintiffs Have Not Identified Any Specific Ford
                Materials or Statements in Support of Their Fraud
                Claims .............................................................. 11

        2.   There Is No Economic Harm Where There has Been No
            Manifestation or Where an Adequate Repair Exists ................. 12

        3.   Because Plaintiffs' Alleged Defect Was Not Safety-
            Related, Ford Had No Duty to Disclose .................................... 14

        4.   According to Plaintiffs, Ford's Disclosure that Its Vehicles
            Were Not Defect-Free Was Part of the Basis of the
            Bargain ...................................................................... 14

    B.    PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED ANY
        EXPRESS WARRANTY CLAIMS .................................................. 15

        1.   Plaintiffs Have Still Not Identified Any Specific
            Affirmations of Fact ................................................... 15

        2.   Because Plaintiffs Have Alleged an Unlikely, Non-Safety
            Defect, They Must Allege a Manifestation to Recover for
            Breach of Warranty ...................................................... 16

        3.   Plaintiffs Have Not Adequately Alleged that a Warranty
            Repair Was, or Would Be, Ineffective ...................................... 17

        4.   Plaintiffs Who Did Not Provide Notice of Breach When
            Required Cannot Assert Express Warranty Claims .................. 19

    C.    PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED ANY
        IMPLIED WARRANTY CLAIMS .................................................. 20

i

# TABLE OF CONTENTS
(continued)

       1.    Plaintiffs Who Have Not Alleged a Manifestation Cannot Recover Under Implied Warranty ............................................... 21

       2.    Plaintiffs Who Received Warranty Repairs Cannot Recover for a Breach of Implied Warranty .............................. 22

       3.    Used-Car Purchasers Are Barred from Asserting Implied Warranty Claims ...................................................................... 22

  D.    PLAINTIFFS HAVE NOT ALLEGED ADEQUATE UNJUST ENRICHMENT CLAIMS .................................................. 24

       1.    Plaintiffs Did Not Confer Any Unfair Benefits on Ford .......... 24

       2.    Indirect Benefits Are Not Sufficient for Used-Car Purchasers ................................................................................ 24

III.    CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Chevron Corp.*,
    656 F.3d 925 (9th Cir. 2011) ........................................................ 19, 20

*Asghari v. Volkswagen Grp. of Am., Inc.*,
    42 F. Supp. 3d 1306 (C.D. Cal. 2013). (Opp'n .)........................... 20, 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................. 2

*Baba v. Hewlett-Packard Co.*,
    No. C 09-05946, 2011 U.S. Dist. LEXIS 8527 (N.D. Cal. Jan. 28,
    2011) ......................................................................................7, 18, 19, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................. 2

*Belville v. Ford Motor Co.*,
    13 F. Supp. 3d 528 (S.D. W. Va. 2014) .............................................. 17

*Belville v. Ford Motor Co.*,
    60 F. Supp. 3d 690 (S.D. W. Va. 2014) .............................................. 16

*Berenblat v. Apple, Inc.*,
    No. C 08–4969 JF, 2010 U.S. Dist. LEXIS 46052 (N.D. Cal. Apr. 7,
    2010) ...................................................................................................... 7

*Briehl v. Gen. Motors Corp.*,
    172 F.3d 623 (8th Cir. 1999) .............................................................. 12

*Brisson v. Ford Motor Co.*,
    602 F. Supp. 2d 1227 (M.D. Fla. 2009) .............................................. 23

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008)............................................................. 23

*Cohen v. Implant Innovations, Inc.*,
    259 F.R.D. 617 (S.D. Fla. Aug. 21, 2008) ........................................ 20

*Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp.*,
    369 F. Supp. 2d 848 (E.D. Tex. 2004) ............................................... 14

iii

REPLY IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS CERTAIN
CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

*CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*,
    No. CV 12-10876-CAS, 2013 U.S. Dist. LEXIS 42999 (C.D. Cal.
    Mar. 25, 2013) ................................................................................. 25

*Darne v. Ford Motor Co.*,
    No. 1:13-cv-03594, 2017 WL 3836586 (N.D. Ill. Sep. 1, 2017) ...................... 15

*FinansResurs, LLC v. Evolution Gaming Int'l, LLC*,
    No. 2:15-cv-1616-JHE, 2016 U.S. Dist. LEXIS 12038 (N.D. Ala.
    Feb. 2, 2016) ................................................................................... 25

*Ford Motor Co. v. Rice*,
    726 So.2d 626 (Ala. 1998) ................................................................... 12

*Garcia v. Clarins USA, Inc.*,
    No. 14-CV-21249-HUCK/OTAZA-REYES, 2014 U.S. Dist. LEXIS
    182426 (S.D. Fla. Sept. 5, 2014) ........................................................... 19

*Hildes v. Andersen*,
    No. 08-cv-0008-BEN (RBB), 2010 U.S. Dist. LEXIS 118217 (S.D.
    Cal. Nov. 8, 2010) .............................................................................. 3

*James v. Yamaha Corp., U.S.A.*,
    No. 15-23750, 2016 U.S. Dist. LEXIS 70702 (S.D. Fla. May 31,
    2016) ............................................................................................. 18

*Jovine v. Abbott Labs, Inc.*,
    795 F. Supp. 2d 1331 (S.D. Fla. 2011) ..................................................... 23

*Keegan v. Am. Honda Motor Co., Inc.*,
    838 F. Supp. 2d 929 (C.D. Cal. 2012) ...................................................... 21

*Li v. Walsh*,
    No. 16-81871-CIV-MARRA, 2017 U.S. Dist. LEXIS 114533 (S.D.
    Fla. Jul. 22, 2017) .............................................................................. 25

*McKay v. Novartis Pharm. Corp.*,
    741 F.3d 694 (5th Cir. 2014) ............................................................ 19, 20

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) .................................................................. 2

*In re MyFord Touch Consumer Litig.*,
    46 F. Supp. 3d 936 (N.D. Cal. 2014) (Alabama and Texas law) .................. 19, 20

iv

*PB Prop. Mgmt., Inc. v. Goodman Mfg. Co.*,
    No. 3:12-cv-1366-HES-JBT, 2016 U.S. Dist. LEXIS 97520 (M.D.
    Fla. May 12, 2016) ................................................................................... 19

*Peterson v. Mazda Motor of Am., Inc.*,
    44 F. Supp. 3d 965 (C.D. Cal. 2014) (Carter, J.) ................................... 21

*Resnick v. Hyundai Motor Am., Inc.*,
    No. CV 16-00593-BRO, 2016 U.S. Dist. LEXIS 160179 (C.D. Cal.
    Nov. 14, 2016) ..................................................................... 2, 9, 10, 11

*Shahinian v. Kimberly-Clark Corp.*,
    No. CV 14-8390 DMG, 2015 U.S. Dist. LEXIS 92782 (C.D. Cal.
    July 10, 2015) ............................................................................................ 8

*Smith v. Apple, Inc.*,
    No. 08-AR-1498-S, 2009 WL 3958096 (N.D. Ala. Nov. 4, 2009) ...................... 19

*Speier-Roche v. Volkswagen Grp. of Am. Inc.*,
    No. 14-20107-CIV-MORENO, 2014 U.S. Dist. LEXIS 59991 (S.D.
    Fla. Apr. 30, 2014) ................................................................................. 23

*Stark v. Soteria Imaging Servs., Inc.*,
    276 F. Supp. 2d 989 (D. Neb. 2003) ..................................................... 25

*In re Takata Airbag Prods. Liab. Litig.*,
    193 F. Supp. 3d 1324 (S.D. Fla. 2016) ................................................. 21

*Tocco v. Richman Greer Prof'l Ass'n*,
    912 F. Supp. 2d 494 (E.D. Mich. 2012) ............................................... 14

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
    Practices, and Prods. Liability Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ............................................... 20

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales
    Practices, and Prods. Liability Litig.*,
    No. 8:10ML2151 JVS, 2012 U.S. Dist. LEXIS 189744 (C.D. Cal.
    May 4, 2012) ........................................................................................... 13

**Statutes**

California Consumer Legal Remedies Act, Cal. Civ. Code § 1782 .......................... 20

Song-Beverly Act ....................................................................................................... 22

REPLY IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS CERTAIN
CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

**Other Authorities**

Local Civil Rule 7-5 ..................................................................................... 1

Federal Rule of Civil Procedure 8(a) ......................................................... 2, 3

Federal Rule of Civil Procedure 9(b) ............................................................. 9

Federal Rule of Civil Procedure 12(b)(6) ...................................................... 1

REPLY IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS CERTAIN
CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

Defendant Ford Motor Company ("Ford"), respectfully submits this Reply in Support of its Motion to Dismiss Certain Claims in Plaintiffs' Consolidated Class Action Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), Local Civil Rule 7-5, and the Court's May 16, 2017 Order Adopting Proposed Dates Affected by Consolidation (Dkt. No. 63).

## I.   INTRODUCTION

The named Plaintiffs, who reside in several different states and own or lease various Ford vehicles, assert a multitude of counts on behalf of a putative class of purchasers and lessees of forty-nine different model/model year Ford vehicles sold between 2011 and 2016 (which Plaintiffs define as the "Defective Vehicles"). (*See* Compl. ¶¶ 7, 17, 25, 36, 39, 44, 52, 60, 63, 67, 75, 83.) According to Plaintiffs' Complaint, the common denominator among these vehicles is that they are all equipped with a Delphi Gen 6 electronic throttle body ("ETB"), which Plaintiffs allege is defective. (*See id.* ¶ 1.) However, the Complaint lacks sufficient, non-conclusory factual allegations concerning the named Plaintiffs' actual vehicles to plausibly establish the essential elements of their various claims.

Instead, Plaintiffs' Complaint relies heavily on a 2013 investigation conducted by the National Highway Traffic Safety Administration ("NHTSA") regarding 2009–2013 Ford Escape, Ford Fusion, Mercury Mariner, and Mercury Milan vehicles equipped with a Delphi Gen 6 ETB. (*See id.* ¶¶ 4, 105.) The Complaint also thoroughly discusses two (2) Customer Satisfaction Programs ("CSPs") that Ford issued in 2014 to address NHTSA concerns regarding the 2009–2013 Ford Escape, Ford Fusion, Mercury Mariner, and Mercury Milan vehicles. Significantly, however, *none* of the named Plaintiffs purports to own a 2009–2013 Ford Escape, Ford Fusion, Mercury Mariner, or Mercury Milan vehicle. (*See id.* ¶¶ 17, 25, 36, 39, 44, 52, 60, 63, 67, 75, 83.) Moreover, the 2009-2013 Ford Escape, Ford Fusion, Mercury Mariner, and Mercury Milan vehicles are *not* among the

1

REPLY IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS CERTAIN CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

1  purported "Defective Vehicles" defined and at issue in Plaintiffs' Complaint.  (*See*
2  Compl. ¶ 7.)

3        Furthermore, while Plaintiffs allege that NHTSA has received "thousands" of
4  consumer complaints regarding the alleged "Defective Vehicles," the Complaint
5  only identifies eleven consumer complaints, most of which do nothing to support
6  Plaintiffs' claims.   Six of these eleven complaints do *not* involve the specific
7  vehicles allegedly owned by the named Plaintiffs.  (Compare Compl. ¶¶ 102, 103,
8  117, 118, 119, 126, 127 and *id.* ¶¶ 17, 25, 36, 39, 44, 52, 60, 63, 67, 75, 83.)
9  Finally, while Plaintiffs contend that Ford made fraudulent omissions in its
10 "promotional materials" and on occasions where the named Plaintiffs "interacted
11 with at least one sales representative at an authorized Ford dealership," the
12 Complaint does not identify any specific promotional materials or interactions, let
13 alone the content thereof.  (*See* Compl. ¶¶ 19–20, 27–28, 37–38, 40–41, 46–47, 54–
14 55, 61–62, 64–65, 69–70, 77–78, 84–85.)

15       In the years since the Supreme Court decided *Bell Atl. Corp. v. Twombly*, 550
16 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Ninth Circuit and
17 this Court have made clear that plaintiffs must allege non-conclusory facts that lead
18 to a plausible inference of legal liability.  *See Moss v. U.S. Secret Serv.*, 572 F.3d
19 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-
20 conclusory 'factual content,' and reasonable inferences from that content, must be
21 plausibly suggestive of a claim entitling the plaintiff to relief.")   Indeed, the
22 Supreme Court held that Rule 8(a) requires more than "labels and conclusions," and
23 that "a formulaic recitation of the elements of a cause of action will not do."
24 *Twombly*, 550 U.S. at 555.  To that end, a trial court "must discount conclusory
25 statements, which are not presumed to be true."  *Resnick v. Hyundai Motor Am.,*
26 *Inc.*, No. CV 16-00593-BRO (PJWx), 2016 U.S. Dist. LEXIS 160179, at *18 (C.D.

27

28

Cal. Nov. 14, 2016).   As discussed in detail below, once Plaintiffs'[1] conclusory allegations have been discounted, the story that emerges shows that the Plaintiffs are not entitled to legal relief.   Accordingly, Plaintiffs have not pled sufficient facts to lead to a plausible inference of legal liability,[2] and this Court should dismiss Plaintiffs' claims.[3]

## II.   ARGUMENT

### A.   PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED ANY FRAUD-BASED CLAIMS.

In its Motion, Ford made four arguments for dismissing Plaintiffs' fraud-based claims: (1) Plaintiffs had not alleged where Ford omitted material information with sufficient particularity; (2) Plaintiffs who had suffered no incidents had suffered no harm; (3) Ford cannot be held liable for an alleged fraudulent omission

---

[1] As Ford noted its opening brief ("Motion") (Dkt. No. 89), while named Plaintiff Sylvia Franco appears in the caption and introduction of the Consolidated Class Action Complaint ("Complaint") (Dkt. No. 75) (*see* Compl. at 2:1–10), there are no claims or allegations regarding her purchase of or experience with her vehicle in the Complaint itself.   Furthermore, Plaintiffs' Opposition (Dkt. No. 90) makes no mention of Plaintiff Franco.   Therefore, it is reasonable to presume that Plaintiff Franco is not asserting claims in this case.   To the extent she asserts any claims in this litigation, they should be dismissed for lack of support under Rule 8(a).

[2] Ford seeks dismissal of each and every count of Plaintiffs' Complaint, except for Count III with respect to named Plaintiffs Kyle and McGlothin, and Count IV with respect to named Plaintiffs Kyle, McGlothin, and Sandler.

[3] Plaintiffs are incorrect that Ford has somehow accepted the sufficiency of the factual averments in the Complaint because Ford answered the pre-consolidation complaint in the Benkle case.   The consolidated Complaint is a new pleading that replaces and nullifies the prior, pre-consolidation pleadings.   *Hildes v. Andersen*, No. 08-cv-0008-BEN (RBB), 2010 U.S. Dist. LEXIS 118217, at *3 (S.D. Cal. Nov. 8, 2010) ("Ninth Circuit law permits a new motion to dismiss after the filing of a new amended complaint." (citing *Sidebotham v. Robison*, 216 F.2d 816, 821–23 (9th Cir. 1954)).

if it had no duty to disclose the information; and (4) Ford had disclosed that defects might arise in its vehicles, and promised to repair them.  (*See* Mot. at 22:17–25:2.)  For the reasons set forth below, Plaintiffs' Opposition fails to overcome these arguments.

### 1.    Plaintiffs Did Not Allege Fraudulent Omission with the Required Particularity.

| Counts | Plaintiffs |
|--------|-----------|
| Counts VII–XV | Aviles, Benkle, Cowen, Kelder, Kiery, Kovak, Kyle, McGlothin, Rojas, Sandler, Suponchick |

Plaintiffs contend that they have alleged their fraud-based claims with sufficient particularity.  However, Plaintiffs' Opposition itself shows that they have not.  Plaintiffs concede that the sufficiency of their fraudulent omission claims depends on whether they have alleged with particularity, at least the following elements:

(1)    the "what" – that Ford knew that each of the named Plaintiffs' specific vehicles were defective and created an "unreasonable safety risk," including "how and when [Ford] became aware of the purported defect," (*see* Opp'n at 6:20–7:10);

(2)    the "why" – that Ford's alleged failure to inform the named Plaintiffs that their specific vehicles were defective was improperly motivated, (*see id.* at 7:11–18); and

(3)    the "how" – the manner in which Ford fraudulently concealed the existence of the alleged defect in the named Plaintiffs' specific vehicles in the specific written or verbal statements that Ford or its authorized representatives made to the named Plaintiffs, (*see* Opp'n at 7:19–8:1).

### a.    Plaintiffs Have Not Plausibly Established Knowledge

4

REPLY IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS CERTAIN CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

**by Ford of a Defect in Plaintiffs' Vehicles at the Time**
**of Sale.**

Plaintiffs' Complaint alleges, in conclusory fashion, "[u]pon information and belief," that "Ford has known of problems with the Delphi Gen 6 [ETB] at least as early as 2009," but failed to disclose this information to purchasers of the alleged "Defective Vehicles." (*See* Compl. ¶ 128.)   This conclusory allegation cannot support Plaintiffs' various fraud-based claims.

To support their conclusory fraud-based claims, Plaintiffs' Complaint concentrates primarily on a 2013 NHTSA investigation (Preliminary Investigation "PE" 13-003) that involved 2009-2013 Ford Escape, Ford Fusion, Mercury Mariner, and Mercury Milan vehicles equipped with a Delphi Gen 6 ETB.   (*See id.* ¶¶ 4, 105.)   Significantly, however, the 2009-2013 Ford Escape, Ford Fusion, Mercury Mariner, and Mercury Milan vehicles are *not* among the purported "Defective Vehicles" defined and at issue in Plaintiffs' Complaint.   (*See id.* ¶ 7.)   Therefore, Plaintiffs' reliance on PE 13-003 does not plausibly establish that Ford had knowledge of any alleged defect in the Plaintiffs' vehicles.[4]

NHTSA closed PE 13-003 in 2014 without finding the presence of a safety defect. And Plaintiffs' Complaint concedes that in 2014, Ford took the following three actions to address the concerns raised by NHTSA in PE 13-003:

(1)      Ford worked with its suppliers and "updated the powertrain control module (PCM) software to include a throttle body motor cleaning cycle during key-on and modified the internal motor components design,

---

[4] Indeed, Plaintiffs' Complaint concedes that the vehicles at issue in PE 13-003 were equipped with a Delphi Gen 6 ETB with a "DS7Z-9E926" part number (*see* Compl. ¶ 107), while the alleged "Defective Vehicles" in this case are equipped with a Delphi Gen 6 ETB with a *different* part number: either "AT4Z-9E926-A" or "AT4Z-9E926-D" (*see* Compl. ¶ 7).

surface finish and material composition to improve durability," (*see* Compl. ¶ 106 (quoting NHTSA's Closing Resume));

(2)  Ford instituted CSP 13N03, which extended the warranty on 2009–2013 Ford Fusion, Mercury Milan, Ford Escape, and Mercury Mariner vehicles (which are not at issue in this case) to cover replacement of the original Delphi Gen 6 ETB with the redesigned Delphi Gen 6 ETB where the dealer has diagnosed a wrench light attributable to the ETB, (*see id.* ¶¶ 108–11); and

(3)  Ford instituted CSP 13B17, as a follow-up to CSP 13N03, offering installation of an "updated powertrain calibration strategy that will allow more engine power based on driver input and vehicle performance" at no charge to the 2009–2013 Ford Fusion, Mercury Milan, Ford Escape, and Mercury Mariner vehicles covered by CSP 13N03 (which, again, are not at issue in this case) (*see* Compl. ¶ 112).

Plaintiffs' Complaint also quotes from a total of eleven alleged consumer complaints posted in NTHSA's complaint registry, a handful of which addressed certain vehicles included in the Plaintiffs' definition of "Defective Vehicles." (*See* Compl. ¶¶ 10, 99, 100, 102, 103, 117, 118, 119, 120, 126, 127.)  However, these complaints do not support Plaintiffs' conclusory allegation that Ford had knowledge of a defect in Plaintiffs' vehicles at the time of sale.  (*See id.* ¶ 128.)

As an initial matter, six of these complaints do *not* involve the specific vehicles allegedly owned by the named Plaintiffs.  (Compare Compl. ¶¶ 102, 103, 117, 118, 119, 126, 127 and *id.* ¶¶ 17, 25, 36, 39, 44, 52, 60, 63, 67, 75, 83.)  These six consumer complaints are therefore not relevant to Ford's knowledge of any alleged defect in the named Plaintiffs' specific vehicles.

Furthermore, four of the remaining five alleged consumer complaints involve vehicles owned by three of the named Plaintiffs, but indicate that the consumer registered the complaint *after* each named Plaintiff is alleged to have purchased or

6

leased his or her vehicle.   Thus, these complaints give no support for Ford's knowledge before Plaintiffs' purchases.

Specifically, Plaintiffs' Complaint alleges that two consumer complaints were made concerning the 2015 Ford Edge – the first on June 25, 2016, (*see id.* ¶ 10), and the second on June 28, 2016, (*see id.* ¶ 127).   However, these two consumer complaints were made months *after* the two named Plaintiffs who own or lease a 2015 Ford Edge vehicle (Benkle and Kovak) allegedly purchased or leased their respective vehicles – i.e., August 23, 2015 (Benkle) and January 10, 2016 (Kovak). (*See id.* ¶¶ 17 (Benkle), 25 (Kovak).)

Similarly, Plaintiffs' Complaint also alleges that two consumer complaints were made concerning the 2011 Ford Edge (or its 2011 Lincoln Mercury counterpart) – the first on October 3, 2014, (*see* Compl. ¶ 99), and the second on August 31, 2015, (*see id.* ¶ 120).   However, these two consumer complaints were made years after August 2013, the date Plaintiff Suponchick (the single named Plaintiff who owns a 2011 Ford Edge) allegedly bought her vehicle.  (*See id.* ¶ 67.)

The remaining consumer complaint quoted in the Complaint was allegedly made by the owner of a 2013 Ford Edge on December 8, 2014, (*see id.* ¶ 100), before named Plaintiff Rojas allegedly purchased his 2013 Ford Edge.  (*See id.* ¶ 53).  However, a single consumer complaint cannot plausibly establish that Ford had knowledge of any alleged defect in the 2013 Ford Edge.  *See, e.g.*, *Baba v. Hewlett-Packard Co.*, No. C 09-05946, 2011 U.S. Dist. LEXIS 8527, at *9−10 (N.D. Cal. Jan. 28, 2011) ("Awareness of a few customer complaints . . . does not establish knowledge of an alleged defect."); *see also Berenblat v. Apple, Inc.*, No. C 08–4969 JF, 2010 U.S. Dist. LEXIS 46052, at *27 (N.D. Cal. Apr. 7, 2010) (same).

Plaintiffs also allege, in conclusory fashion, that Ford received "thousands" of additional consumer complaints "going back as early as 2011."  (Compl. ¶ 129.)  In support of this allegation, Plaintiffs note that NHTSA concluded in PE 13-003 that "Ford had received 10,999 complaints directly in addition to the 1,471 complaints

7

filed with NHTSA regarding the vehicles ultimately covered by CSP 13N03." (Compl. ¶ 129.)  Plaintiffs likewise assert that Ford analyzed and discussed certain vehicle data to respond to PE 13-003.  (Compl. ¶¶ 129–34.)  However, again, the vehicles that were at issue in PE 13-003 and subsequently covered by CSP 13N03 – the 2009–2013 Ford Fusion, Mercury Milan, Ford Escape, and Mercury Mariner vehicles – are not among the vehicles owned or leased by the named Plaintiffs; nor are they among the vehicles defined by Plaintiffs as allegedly "Defective Vehicles" in this case.  (*See* Compl. ¶¶ 17, 25, 36, 39, 44, 52, 60, 63, 67, 75, 83.)

Plaintiffs attempt to connect the consumer complaints concerning the 2009–2013 Ford Fusion, Mercury Milan, Ford Escape, and Mercury Mariner vehicles to the allegedly "Defective Vehicles" at issue in this case by claiming, in a conclusory manner: "Upon information and belief, Ford began to receive a similar number of manufacturer complaints regarding the Defective Vehicles at issue."  (*See id.* ¶ 129.) However, this general and unsupported allegation concerning the alleged "Defective Vehicles" does not plausibly show that Ford knew that any of the named Plaintiffs' specific vehicles were defective at the time that each named Plaintiff purchased or leased his or her vehicle.

Indeed, the vast majority of Plaintiffs' allegations have to do with the population investigated by NHTSA, *not* the Plaintiffs' specific vehicles and the other allegedly "Defective Vehicles" at issue in this case.  Plaintiffs have not alleged any information which respect to the complaint rate of any of Plaintiffs' vehicles, and there is an utter lack of information plausibly establishing that any of the Plaintiffs' vehicles have an alleged defect that is "substantially certain" to occur. Therefore, far from being particularized, Plaintiffs' fraud-based allegations are incomprehensibly vague, which prevents Ford from learning what information *about Plaintiffs' vehicles* it has withheld.  *See Shahinian v. Kimberly-Clark Corp.*, No. CV 14-8390 DMG (SHx), 2015 U.S. Dist. LEXIS 92782, at *14 (C.D. Cal. July 10, 2015) (while Rule 9(b) is somewhat relaxed in a fraudulent omission claim, plaintiff

must still "describe the content of the omission and where the omitted information should or could have been revealed" and "provide representative samples of advertisements, offers, or other representations that plaintiff relied on to make her purchase and that failed to include the allegedly omitted information") (internal quotation omitted). Accordingly, once the Court discounts Plaintiffs' conclusory allegations, *see Resnick*, 2016 U.S. Dist. LEXIS 160179, at *18, the remaining allegations do not plausibly establish the requisite pre-sale defect knowledge by Ford sufficient to maintain Plaintiffs' fraud claims.

  **b.**  **Plaintiffs Have Not Plausibly Alleged a Safety-Related Defect.**

  Plaintiffs have not plausibly alleged that their specific vehicles contain a defect that creates an unreasonable safety risk. Once the Court strips away the conclusory allegations related to safety, it is left with the following facts from the Complaint and its attachments:

- NHTSA conducted an investigation of certain vehicles containing the Delphi ETB, and it did not find a safety-related defect.[5] Had it done so, it would have ordered a recall or other safety action.

- Despite allegedly "thousands" of complaints about the ETB in both the class vehicles and other vehicles, Plaintiffs have not pointed to a single accident or

---

[5] (*See* PE 13-003 Closing Resume, attached as "Reply Ex. A.") Plaintiffs did not attach the Closing Resume to their Complaint, but quoted from it extensively. (*See* Compl. ¶¶ 106–08.) As Ford pointed out in its Motion, (Mot. at 12 n.4), NHTSA was careful to explain that its conclusion was not a definitive "no defect" finding; nonetheless its failure to make an express finding of a safety defect is still significant.

9

REPLY IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS CERTAIN
CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

physical injury resulting from the alleged defect in their models of vehicles. (*See* Compl. ¶¶ 10, 99–103, 117–20, 126–27.)[6]

- While some of the named Plaintiffs allegedly suffered a manifestation of the defect, none lost the ability to steer their vehicles, and none were physically injured as a result of the loss of power.  (*See, e.g.*, Compl. ¶¶ 23 ("Plaintiff Benkle was able to coast off the freeway"); 33 ("Plaintiff Kovak and his wife were able to maneuver the car to the side of the road"); 50 (Plaintiff Kyle "was able to maneuver his vehicle onto a side street"); 58 ("Plaintiff Rojas' wife was able to maneuver the vehicle to the side of the road").)

These facts do not indicate a safety-related defect.  None of the named Plaintiffs were injured as a result of the alleged defect.  None were involved in a collision.  Furthermore, Plaintiffs have alleged no accidents or injuries resulting from an incident in any allegedly Defective Vehicle.  Even the NHTSA Closing Resume for the 2009–2013 Ford Escape, Ford Fusion, Mercury Mariner, and Mercury Milan vehicles, which were equipped with an earlier version of the Delphi Gen 6 ETB, reports only eleven low-speed accidents (only one resulting in injury) from 11,960 alleged ETB failure incidents.  (*See* Reply Ex. A.)  Furthermore, while 11,960 incidents sounds high, it amounted to only a 0.7% complaint rate for the estimated population of 1,593,452 vehicles at issue, and an accident rate of only 0.0007%.  (*See id.*)

As a result, once the Court discounts Plaintiffs' conclusory allegations, *see Resnick*, 2016 U.S. Dist. LEXIS 160179, at *18, the remaining allegations do not plausibly establish that the alleged defect in their specific vehicles creates an unreasonably safety risk.

---

[6] It is reasonable to infer that the Plaintiffs would have included any allegation concerning an actual safety problem, could they find one.

10

REPLY IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS CERTAIN CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

**c.** **Plaintiffs Have Not Identified Any Specific Ford Materials or Statements in Support of Their Fraud Claims.**

Plaintiffs' Complaint does not allege with specificity the particular Ford written materials or interpersonal interactions with authorized Ford representatives upon which they based their fraud and breach of express warranty claims, let alone any specific statements made therein. Instead, Plaintiffs repeatedly offer only the following conclusory allegations: "[Plaintiffs] reviewed Ford's promotional materials regarding [their] vehicle[s]" and/or "interacted with at least one sales representative at an authorized Ford dealership" before purchasing or leasing their vehicles. (*See* Compl. ¶¶ 19–20, 27–28, 37–38, 40–41, 46–47, 54–55, 61–62, 64–65, 69–70, 77–78, 84–85.)

Moreover, Ford's express written warranty, which Plaintiffs *specifically allege* formed the basis of their bargain (Opp'n at 19:22 (citing Compl. ¶¶ 179, 180)), stated that their vehicles were *not* defect-free:

> This warranty *does not mean that each Ford vehicle is defect free*. Defects may be unintentionally introduced into vehicles during the design and manufacturing processes and such defects could result in the need for repairs. For this reason, Ford provides the New Vehicle Limited Warranty in order to remedy any such defects that result in vehicle part malfunction or failure during the warranty period.

(*See* Mot., Ex. A at 14 (emphasis added).)

Here again, once the Court discounts Plaintiffs' conclusory allegations, *see Resnick*, 2016 U.S. Dist. LEXIS 160179, at *18, the remaining allegations do not plausibly establish any false statements or alternate express warranties made by Ford that would support Plaintiffs' fraud and express warranty claims.

11

**2. There Is No Economic Harm Where There has Been No Manifestation or Where an Adequate Repair Exists.**

| Counts | Plaintiffs |
|---|---|
| Counts VII–XIII | Aviles, Benkle, Cowen, Kelder, Kiery, Kovak |

The Complaint does not allege that named Plaintiffs Aviles, Cowen, Kelder, or Kiery have experienced any malfunction in their vehicles to date. (*See* Compl. ¶¶ 36–38 (Aviles), 83–85 (Cowen), 60–62 (Kelder), 63–65 (Kiery).)  Plaintiffs argue that they have suffered economic harm even if they have driven their vehicles without incident, including after repair, because those vehicles contained a "higher risk of manifesting a defect" that poses a "safety risk." (Opp'n at 11:22–13:19.)  As discussed in detail above, however, Plaintiffs have not plausibly established either.[7] Indeed, leaving aside the fact that NHTSA did not investigate Plaintiffs' specific vehicles, its Closing Resume shows, at worst, that these named Plaintiffs bought a vehicle where only seven vehicles in 1,000 had a chance of manifesting the alleged defect, and only seven vehicles in 1,000,000 had a chance of the alleged defect causing a minor accident. (*See* Reply Ex. A.)

---

[7] Plaintiffs attempt to distinguish *Pfizer, Inc. v. Farsian*'s clear mandate that manifestation be pled to survive a motion to dismiss by arguing that *Farsian* was a pseudo-personal injury case. (Opp'n at 12:5−16 (citing 682 So.2d 405, 407 (Ala. 1996).)  But the Supreme Court of Alabama has made clear that its holding in *Farsian* extends to cases directly analogous to Plaintiffs' here.  *See, e.g.*, *Ford Motor Co. v. Rice*, 726 So.2d 626, 629 (Ala. 1998) (applying *Farsian*'s manifestation requirement to fraud-based claims regarding vehicles' purportedly unsafe propensity to roll over); *see also Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627–28 (8th Cir. 1999) (citing cases, including *Farsian*, in affirming dismissal of fraud-based claims regarding an allegedly dangerous antilock brake defect).  These cases also make clear that a plaintiff's conclusory characterization of a defect as a "safety" issue, without factual support, is entitled to no weight.

In addition, the Complaint alleges that named Plaintiffs Benkle and Kovak experienced a manifestation of the alleged defect in their ETBs, but that Ford repaired their ETBs under warranty at no charge. (*See* Compl. ¶¶ 23 (Benkle), 35 (Kovak).) Plaintiffs offer a conclusory allegation that their warranty repairs were "temporary" and "inadequate." (*See, e.g.*, *id.* ¶¶ 182, 196.) As an initial matter, the NHTSA Closing Resume for PE 13-003, which Plaintiffs cite, describes a repair that NHTSA deemed adequate to address its concerns. (*See id.* ¶ 106 (quoting NHTSA Closing Resume).) More importantly, Plaintiffs' statement is directly contradicted by the experiences Plaintiffs allege in their Complaint, which does not allege that that any of the named Plaintiffs experienced any malfunction after receiving a repair. (*See id.* ¶¶ 23 (Benkle), 35 (Kovak).) Therefore, based on these facts, gleaned from Plaintiffs' own substantive allegations, as well as the documents to which they refer, it is clear that Plaintiffs have not plausibly established that Plaintiff Benkle and Plaintiff Kovak have any ongoing ETB issues.

In sum, according to their own Complaint allegations, all of these named Plaintiffs have received exactly what they believed they were buying: a vehicle with a functioning ETB.[8]

---

[8] Plaintiffs attempt to circumvent the manifestation requirement by citing cases that allow an exception to the general manifestation rule when a plaintiff sufficiently alleges that a defect is "substantially certain" to occur. (Opp'n at 21–25.) But Plaintiffs do not and cannot tie these cases, and the law for which they stand, to allegations in their Complaint that the purported defect was "substantially likely" to occur in *their* vehicles. At best, their allegations relate to vehicles covered in the NHTSA investigation, none of which are at issue here. Thus, Plaintiffs still must plead manifestation. *See, e.g.*, *In re Toyota Motor Corp.*, No. 8:10ML2151 JVS (FMOx), 2012 U.S. Dist. LEXIS 189744, at *253 (C.D. Cal. May 4, 2012).

### 3. Because Plaintiffs' Alleged Defect Was Not Safety-Related, Ford Had No Duty to Disclose.

| Counts | Plaintiffs |
|---|---|
| Counts X, XI, XIV, XV | Kelder, Kiery, Kyle, McGlothin, Rojas |

Plaintiffs argue that, under each relevant state's law, Ford had a duty to disclose "a latent automobile defect that poses a safety risk to consumers." (Opp'n at 13:23.) Plaintiffs also contend that Ford had a duty to speak if not doing so would render its prior speech deceptive. (*Id.* at 14:17–23.) As should be clear by now, both Plaintiffs' Complaint and NHTSA's Closing Resume indicate that this was not a safety-related defect.[9] And, since Plaintiffs have not identified any "prior speech" with any particularity, it is impossible to determine whether Ford's alleged omissions rendered any of its other unidentified statements deceptive.

### 4. According to Plaintiffs, Ford's Disclosure that Its Vehicles Were Not Defect-Free Was Part of the Basis of the Bargain.

| Counts | Plaintiffs |
|---|---|
| Counts VII–XV | Aviles, Benkle, Cowen, Kelder, Kiery, Kovak, Kyle, McGlothin, Rojas, Sandler, Suponchick |

Finally, Plaintiffs argue that this Court should ignore Ford's statement in its written warranty that its vehicles are not defect-free because they have alleged, in

---

[9] Plaintiffs' claims also fail because, as Ford demonstrated in Part II.A.1.a, Ford had no knowledge of any defect in these particular vehicles. "Obviously, there is no duty to disclose what is not known." *Tocco v. Richman Greer Prof'l Ass'n*, 912 F. Supp. 2d 494, 527 (E.D. Mich. 2012); *accord Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp.*, 369 F. Supp. 2d 848, 858 (E.D. Tex. 2004) ("[A] seller has no duty to disclose facts he does not know.").

conclusory fashion, that this was a safety-related defect that was "substantially certain" to occur.  (*See* Opp'n at 6:9–13.)  As discussed in detail above, their substantive allegations show this was neither a safety defect, nor a defect that is "substantially certain" to occur.  More importantly, Plaintiffs' statement here directly contradicts their argument that "Ford provided Plaintiffs with an express Limited Warranty that became part of the basis of the parties' bargain." (*See* Opp'n at 19:21–23 (citing Compl. ¶¶ 179–80).)  Plaintiffs cannot have it both ways.  Either Ford's clear statement that its vehicles were not defect-free was part of the basis of its bargain with Plaintiffs, in which case they could not reasonably expect a defect-free vehicle, or it was not, in which case Plaintiffs have not clearly identified the affirmations that were part of the bargain.  Faced with a similar question, the United States District Court for the Northern District of Illinois recently held that the language of the written warranty controlled.  *Darne v. Ford Motor Co*., No. 1:13-cv-03594, 2017 WL 3836586, at *11 (N.D. Ill. Sept. 1, 2017) (no fraudulent omission claim where "warranty expressly states that the engine may have defects").

B.  <u>PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED ANY EXPRESS WARRANTY CLAIMS.</u>

As Ford pointed out in its Motion, the facts Plaintiffs have pled show that it could not have breached its written express warranty, because those Plaintiffs covered by the express warranty received a replacement ETB at no charge, and have alleged no further incidents.  (Mot. at 31:4–35:16.)  (To the extent Plaintiffs were relying on some other affirmation, they have not identified any that would form the basis of their bargain.  (*Id.* at 28:4–29:8.))

1.  **Plaintiffs Have Still Not Identified Any Specific Affirmations of Fact.**

| Counts | Plaintiffs |
|---|---|

| Count II | Aviles, Benkle, Cowen, Kelder, Kiery, Kovak, Kyle, McGlothin, Rojas, Sandler, Suponchick |
| --- | --- |
| Count VI | Aviles, Benkle, Kovak, Sandler |
| Count XVI | Cowen |

Plaintiffs respond by contending that Ford made "multiple affirmations," (Opp'n at 20:14–18); however, aside from Ford's express written warranty, they do not identify any of them.   The closest Plaintiffs come is to argue that Ford highlighted "safety" as a theme in its promotional literature.   (*Id.* at 20:9–16.) Highlighting an "emphasis on safety," however, does not identify any affirmation that would form the basis of a bargain.  *See, e.g.*, *Belville v. Ford Motor Co.*, 60 F. Supp. 3d 690, 695 (S.D. W. Va. 2014) ("themes of safety and reliability" were not actionable statements).

### 2.      Because Plaintiffs Have Alleged an Unlikely, Non-Safety Defect, They Must Allege a Manifestation to Recover for Breach of Warranty.

| Counts | Plaintiffs |
| --- | --- |
| Counts II, VI | Aviles |
| Counts II, XVI | Cowen |
| Count II | Kelder, Kiery |

As noted above, the Complaint does not set forth any allegation that four of the eleven named Plaintiffs have experienced any malfunction in their vehicles to date.   (*See* Compl. ¶¶ 36–38 (Aviles), 83–85 (Cowen), 60–62 (Kelder), 63–65 (Kiery).)  Plaintiffs argue that they do not have to allege that the defect manifested itself in their vehicles, because it is a safety-related defect, and they have "been

16

subjected to life-threatening danger every time they drive their Defective Vehicles." (*See* Opp'n at 22:9–13; *see also id.* at 23:14–18 ("[I]t is not a matter of *if* Plaintiffs will experience the alleged throttle defect, but rather, a matter of *when* they will experience the alleged throttle defect.") (emphasis in original).)

As discussed in greater detail above, despite their breathless rhetoric, Plaintiffs have *not* adequately alleged a safety-related defect, let alone one that was "substantially certain" or "likely" to occur at any point. Even assuming their vehicles were substantially similar to those NHTSA investigated, only seven in 1,000 vehicles are likely to manifest the alleged defect, and only seven in 1,000,000 vehicles are likely to be in a resulting minor accident, making it highly unlikely that any manifestation of the alleged defect in the Plaintiffs' specific vehicles will result in any collision or injury. Under these circumstances, where there is "no objective evidence of serious injury or death in the Complaint or the probability of damage occurring," a plaintiff will not be excused from alleging manifestation. *Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528, 542 (S.D. W. Va. 2014) (dismissing claims of spontaneous sudden acceleration) (cited by Plaintiffs in their Opposition at 23:23–24:5).

### 3. Plaintiffs Have Not Adequately Alleged that a Warranty Repair Was, or Would Be, Ineffective.

| Counts | Plaintiffs |
|---|---|
| Count II | Aviles, Benkle, Cowen, Kelder, Kiery, Kovak, Kyle, McGlothin, Rojas, Sandler, Suponchick |
| Count IV | Aviles, Benkle, Kovak, Sandler |
| Count XVI | Cowen |

Plaintiffs Benkle and Kovak have received a replacement ETB at no charge, and neither alleges that they have experienced any malfunction in their vehicles since.  (*See* Compl. ¶¶ 16–23 (Benkle), 24–35 (Kovak).)  Plaintiffs Aviles, Cowen, Kelder, Kiery, and Sandler do not allege that they presented their vehicles for repair under Ford's Limited Express Warranty.  Plaintiffs argue that Plaintiffs Benkle and Kovak may nonetheless maintain their breach of warranty claims because they received "temporary" and "inadequate" repairs.  (*See* Opp'n at 24:12.)  Similarly, Plaintiffs Aviles, Cowen, Kelder, and Sandler argue that they did not have to present their vehicles for repair to maintain a warranty claim because they have alleged – in conclusory fashion – that Ford's repair would not have worked.  (*See id.*)  However, as discussed above, Plaintiffs have failed to plead facts plausibly establishing that repair during the warranty period was, or would have been, unsuccessful.

To support their contentions, Plaintiffs cite *James v. Yamaha Corp., U.S.A.*, No. 15-23750, 2016 U.S. Dist. LEXIS 70702 (S.D. Fla. May 31, 2016) and *Baba*, 2011 U.S. Dist. LEXIS 8527.  In *James*, Yamaha informed the plaintiffs that they would have to come in for continual repairs of the defective part.  2016 U.S. Dist. LEXIS 70702, at *20–22.  In *Baba*, the named plaintiff alleged that he had "contacted [the defendant] on multiple occasions without obtaining resolution of the problem."  2011 U.S. Dist. LEXIS 8527, at *20.  Neither case is analogous to Plaintiffs' claims here, where each Plaintiff who received a repair has alleged no further difficulty with their vehicles.  Using the logic employed in *James* and *Baba*, the Plaintiffs here have received successful repairs of their vehicles.  As a result, they cannot assert claims for breach of express warranty.

Plaintiffs Kyle, McGlothin, Rojas, and Suponchick received out-of-warranty repairs.  (*See* Compl. ¶¶ 50 (Kyle), 82 (McGlothin), 59 (Rojas), 73 (Suponchick).)  None of these Plaintiffs allege in the Complaint that they have experienced any issues after their vehicles were repaired.  (*Id.* ¶¶ 43–50 (Kyle), 74–82 (McGlothin), 51–59 (Rojas), 66–73 (Suponchick).)  Plaintiffs contend that those Plaintiffs who

18

1 received out-of-warranty repairs can maintain express warranty claims because their

2 vehicles were "likely" or "substantially certain" to malfunction during the warranty

3 period.  (*See* Opp'n at 25:16–26:17; *see also* Compl. ¶¶ 50 (Kyle), 82 (McGlothin),

4 59 (Rojas), 73 (Suponchick).)  However, as discussed in detail above, Plaintiffs have

5 failed to plead with specificity facts plausibly establishing that their specific

6 vehicles were likely to malfunction during the warranty period.

### 4.    Plaintiffs Who Did Not Provide Notice of Breach When Required Cannot Assert Express Warranty Claims.

| Counts | Plaintiffs |
|---|---|
| Count II | Cowen, Kelder, Kiery, Kyle, McGlothin, Rojas |
| Count XVI | Cowen, Kelder |

13 As to notice of breach of express warranty, Plaintiffs rely exclusively on the

14 notice Plaintiff Aviles sent on December 14, 2016.  This purported notice fails to

15 constitute sufficient notice for at least two reasons.  First, the purported notice was

16 sent on December 14, 2016, *after* this suit was instituted on August 24, 2016 by

17 Plaintiffs Aviles, McGlothin, and Rojas.  The cases cited by Ford in its Motion

18 make clear that, in the relevant states, pre-suit notice is required, and the filing of a

19 complaint does not constitute sufficient notice.  *See, e.g.*, *McKay v. Novartis Pharm.*

20 *Corp.*, 741 F.3d 694, 705–06 (5th Cir. 2014) (applying Texas law); *In re MyFord*

21 *Touch Consumer Litig.*, 46 F. Supp. 3d 936, 974–75 (N.D. Cal. 2014) (Alabama and

22 Texas law); *Smith v. Apple, Inc.*, No. 08-AR-1498-S, 2009 WL 3958096, at *1

23 (N.D. Ala. Nov. 4, 2009) (Alabama law); *see also Alvarez v. Chevron Corp.*, 656

24 F.3d 925, 932 (9th Cir. 2011) (California law); *PB Prop. Mgmt., Inc. v. Goodman*

25 *Mfg. Co.*, No. 3:12-cv-1366-HES-JBT, 2016 U.S. Dist. LEXIS 97520, at *86–87

26 (M.D. Fla. May 12, 2016) (Florida law); *Garcia v. Clarins USA, Inc.*, No. 14-CV-

27 21249-HUCK/OTAZA-REYES, 2014 U.S. Dist. LEXIS 182426, at *16–19 (S.D.

28 Fla. Sept. 5, 2014) (Florida law).  Plaintiffs do not address this well-established law.

19

1    Therefore, Aviles' "notice," sent after his suit was instituted, cannot serve as notice

2    for himself, McGlothin, or Rojas.

3        Second, Aviles' notice cannot suffice as notice for others because notice must

4    be individualized.  *See, e.g.*, *McKay*, 751 F.3d at 706 (notice must be given "of a

5    problem with a particular product purchased by a particular buyer"); *Cohen v.*

6    *Implant Innovations, Inc.*, 259 F.R.D. 617, 625, 642 (S.D. Fla. Aug. 21, 2008) (each

7    plaintiff must provide individual notice of a breach).  Plaintiffs' citation to *Asghari*

8    *v. Volkswagen Grp. of Am., Inc*., 42 F. Supp. 3d 1306 (C.D. Cal. 2013), is

9    unavailing; *Asghari* addressed class notice only in the context of a claim under

10   California's Consumer Legal Remedies Act, Cal. Civ. Code § 1782, not a breach of

11   express warranty claim.  42 F. Supp. 3d at 1317–18.  The required notice of a breach

12   of express warranty claim cannot be made on a class-wide basis, especially when the

13   only plaintiff's notice actually submitted was not even adequate as to himself.

14   *McKay*, 751 F.3d at 706.  Even *Asghari* holds that if the class-wide notice no longer

15   applies to the named plaintiff who submitted it, no other plaintiffs can rely on that

16   notice.  *Asghari*, 42 F. Supp. 3d at 1318.  Thus, Aviles' deficient post-suit notice

17   fails to meet Plaintiffs' pleading requirements for breach of express warranty.[10]

18   These claims should be dismissed.

19   _____

20   [10] Plaintiffs comment in passing, without legal support, that Plaintiffs Rojas and

21   McGlothin provided Ford with sufficient notice by taking their vehicles to Ford

     dealerships.  However, these dealership visits occurred after the warranty period.

22   *Baba*, 2011 U.S. Dist. LEXIS 8527, at *22 n.3 (notice outside the warranty period is

23   insufficient as a matter of law); *In re Toyota Motor Corp. Unintended Acceleration*

     *Mktg., Sales Practices, and Prods. Liability Litig.*, 754 F. Supp. 2d 1145, 117 (C.D.

24   Cal. 2010) (same).

25   Nor do NHTSA's investigation and the "thousands" of consumer complaints

26   suffice as notice.  A general awareness of alleged defects does not meet the notice

     requirement.  *See, e.g.*, *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 975,

27   978 (Alabama and Florida law).

28

C.     PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED ANY IMPLIED WARRANTY CLAIMS.

1.     **Plaintiffs Who Have Not Alleged a Manifestation Cannot Recover Under Implied Warranty.**

| Counts | Plaintiffs |
|---|---|
| Counts III, V, XVII | Aviles, Cowen, Kelder, Kiery |

In its Motion, Ford pointed out that, unless Plaintiffs allege a manifestation of the alleged defect, they cannot bring a claim for breach of implied warranty.  (Mot. at 37:3–25.)   Plaintiffs respond by citing to a handful of cases that have held otherwise: *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929 (C.D. Cal. 2012); *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324 (S.D. Fla. 2016); and *Asghari*, 42 F. Supp. 3d at 1306.  (Opp'n at 32:3–33:6.)   As discussed below, however, none of these cases relieve Plaintiffs of their burden of alleging a manifestation.

This Court has already, after considering its doctrinal underpinnings, declined to follow *Keegan* on precisely the point Plaintiffs argue.  *See Peterson v. Mazda Motor of Am., Inc.*, 44 F. Supp. 3d 965, 970–72 (C.D. Cal. 2014) (considering the cases cited by *Keegan* and holding that the plaintiff must "at least [allege] that symptoms of the defect manifested during the warranty period") (Carter, J.).   In *Asghari*, unlike here, the plaintiffs had already alleged a manifestation, namely a measurable over-consumption of motor oil.  42 F. Supp. 3d at 1339.  Here, the only "present" defect is the vague, unquantified possibility of experiencing a power-reduction event at some point in the future.  Finally, in *In re Takata*, the court did not hold that Florida and Alabama law do not require an allegation of manifestation; instead it held that given the extreme nature of the allegations – that an airbag propellant might send shrapnel into the very people the airbag was supposed to protect – the court would excuse the plaintiffs from their burden.  193 F. Supp. 3d at

21

1335 ("If Takata had installed grenades in its airbags that may or may not explode on impact, a court would not require an explosion to demonstrate manifestation of a defect.   Plaintiffs have alleged essentially this scenario.").   Plaintiffs have not alleged this "grenade" scenario here.  To the contrary, Plaintiffs have not alleged a single accident or injury among users of the allegedly Defective Vehicles.

## 2.   Plaintiffs Who Received Warranty Repairs Cannot Recover for a Breach of Implied Warranty.

| Counts | Plaintiffs |
|---|---|
| Counts III, V | Benkle, Kovak |

In its Motion, Ford argued that under California law, there is no breach of any implied warranty where the vehicle is "roadworthy in its present condition without any repairs."   (Mot. at 38:10–17.)   Plaintiffs have cited no contrary precedent. Therefore, the Plaintiffs who received a warranty repair at no charge and have not alleged any subsequent malfunction (i.e., Plaintiffs Benkle and Kovak), cannot assert claims for breach of implied warranty.

## 3.   Used-Car Purchasers Are Barred from Asserting Implied Warranty Claims.

| Counts | Plaintiffs |
|---|---|
| Counts III, V, VXII | Cowen, Rojas, Suponchick |

Plaintiffs concede that Plaintiff Cowen does not have an implied warranty claim.  (Opp'n at 35:24–27.)

Ford concedes that, under the Song-Beverly Act, privity is not required, and withdraws its motion on this ground against Plaintiff Aviles.  (Plaintiff Aviles is still barred by his inability to allege a manifestation of the alleged defect.)

Plaintiffs' argument that Ford has made used-car buyers third-party beneficiaries because it offers a three-year limited express warranty, however, is too

22

attenuated to overcome the privity requirement under Florida law or California's interpretation of the UCC. *See Jovine v. Abbott Labs, Inc.*, 795 F. Supp. 2d 1331, 1341 (S.D. Fla. 2011) (dismissing claims for breach of implied warranty under Florida law when plaintiff failed to allege privity with manufacturer); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (same, California law). Nor have Plaintiffs offered any reason to hold that Nebraska would extend the benefits of an implied warranty to a used-car purchaser.

Plaintiffs' argument that they have some vague claim as intended beneficiaries further fails because they never alleged facts to support such a status. *See, e.g.*, *Brisson v. Ford Motor Co.*, 602 F. Supp. 2d 1227, 1232 (M.D. Fla. 2009) (dismissing implied warranty claims of plaintiffs who purchased vehicles from authorized dealers, non-affiliated dealers, and private parties—not the vehicle manufacturer—and never alleged any agency relationship between these entities and the manufacturer), *affirmed in relevant part*, 349 F. App'x 433 (11th Cir. 2009); *accord Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-20107-CIV-MORENO, 2014 U.S. Dist. LEXIS 59991, at *22 (S.D. Fla. Apr. 30, 2014) ("[W]hen a vehicle is purchased directly from a dealer as opposed to the manufacturer—as occurred here—no privity exists between the plaintiff and manufacturer."). Plaintiffs have not pled facts to support a claim that privity exists or that they have any status as intended beneficiaries.

D.   PLAINTIFFS HAVE NOT ALLEGED ADEQUATE UNJUST ENRICHMENT CLAIMS.[11]

| Counts | Plaintiffs |
|---|---|
| Counts IV | Aviles, Benkle, Cowen, Kelder, Kiery, Kovak, Rojas, Suponchick |

### 1.   Plaintiffs Did Not Confer Any Unfair Benefits on Ford.

In its Motion, Ford pointed out that – for those named Plaintiffs that did not experience a manifestation, or received a warranty repair – there was no unjust benefit conferred on Ford at all.  These Plaintiffs got exactly what they paid for: a functioning ETB, or a repair that included a functioning ETB.

Plaintiffs' sole response here is to invoke their conclusory allegation that Ford's repairs were not adequate.  (Opp'n at 39:14–23.)  As Ford has repeatedly pointed out, this conclusory allegation is contradicted by both NHTSA's Closing Resume and Plaintiffs' own experiences.  The simple fact is that Plaintiffs received the benefit of their bargain.  Therefore, they cannot maintain a claim for unjust enrichment.

### 2.   Indirect Benefits Are Not Sufficient for Used-Car Purchasers.

Plaintiffs contend that the laws of Alabama, California, Florida, and Nebraska all recognize unjust enrichment where a plaintiff indirectly confers a benefit on the defendant.  The cases they cite, however, do not support that proposition.

*Abernathy v. Church of God*, an unpublished case from the Northern District of Alabama, is an outlier.  The majority of Alabama courts have held that "a claim

---

[11] Ford concedes that recent Ninth Circuit precedent clarifies that California recognizes a separate cause of action for unjust enrichment.

for unjust enrichment is premised on a 'showing that defendant *holds money* which, in equity and good conscience belongs to plaintiff.'"  *See FinansResurs, LLC v. Evolution Gaming Int'l, LLC*, No. 2:15-cv-1616-JHE, 2016 U.S. Dist. LEXIS 12038, at *4 (N.D. Ala. Feb. 2, 2016) (quoting *Hancock–Hazlett Gen. Constr. Co., Inc. v. Trane Co.*, 499 So. 2d 1385, 1387 (Ala. 1986)) (emphasis added).

*CSI Elec. Contractors, Inc. v. Zimmer Am. Corp.*, No. CV 12-10876-CAS (AJWx), 2013 U.S. Dist. LEXIS 42999 (C.D. Cal. Mar. 25, 2013), does not hold that an indirect benefit may sustain an unjust enrichment claim.  Instead, it dismisses a claim where the plaintiff did not allege that the defendant had directly benefited from plaintiff's non-receipt of payment.  2013 U.S. Dist. LEXIS 42999, at *13–14 ("Without any allegation that Carbonlite had any intention that its payment would be conveyed directly to plaintiff, rather than simply to Bezner, the Court fails to see how Zimmer 'wrongfully received' a benefit at plaintiff's expense.").

*Li v. Walsh*, No. 16-81871-CIV-MARRA, 2017 U.S. Dist. LEXIS 114533 (S.D. Fla. Jul. 22, 2017), does not hold or recognize that an indirect benefit may justify an unjust enrichment claim.  It merely holds that a plaintiff may plead unjust enrichment in the alternative to a contract claim, and only then when one of the parties asserts that the contract governing the dispute is invalid.  2017 U.S. Dist. LEXIS 114533, at *28–29.

Finally, in *Stark v. Soteria Imaging Servs., Inc*., 276 F. Supp. 2d 989 (D. Neb. 2003), the court allowed an unjust enrichment claim where "the complaint plainly alleges that Stark provided the defendants with professional and consulting services," a direct benefit.  276 F. Supp. 2d at 994.

## III.   CONCLUSION

For all the reasons set forth above, Ford respectfully moves the Court to dismiss all of the counts in Plaintiffs' Complaint, except for Counts III with respect to named Plaintiffs Kyle and McGlothin, and Count IV with respect to named Plaintiffs Kyle, McGlothin, and Sandler.

25

1   Dated: September 18, 2017            */s/ Derek H. Swanson*

2                                  By:   Derek H. Swanson

3                                        Derek H. Swanson (*pro hac vice*)

4                                        dswanson@mcguirewoods.com
                                         **MCGUIREWOODS LLP**

5                                        Gateway Plaza

6                                        800 East Canal Street
                                         Richmond, VA 23219

7                                        Telephone: (804) 775-1081

8                                        Facsimile: (804) 698.2258

9                                        Joan S. Dinsmore (SBN 245629)

10                                       jdinsmore@mcguirewoods.com
                                         **MCGUIREWOODS LLP**

11                                       434 Fayetteville Street

12                                       Suite 2600
                                         Raleigh, North Carolina 27601

13                                       Telephone:  (919) 755-6693

14                                       Facsimile: (919) 755-6592

15                                       Laura G. Brys

16                                       lbrys@mcguirewoods.com
                                         **MCGUIREWOODS LLP**

17                                       1800 Century Park East 8th Floor

18                                       Los Angeles, CA 90067
                                         Telephone: 310-315-8226

19                                       Facsimile: 310-956-3167

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS CERTAIN
CLAIMS IN PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT